September 1, 2026

***By ECF***

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
250 Golden Gate Avenue
San Francisco, CA 94102

Re: *Cambronne Inc., et al. v. Meta Platforms, Inc.*, Case No. 3:26-cv-03725-VC;
*Chicken Soup for the Soul, LLC v. Meta Platforms, Inc.*, Case No. 3:26-cv-02333-VC;
*Cognella, Inc. v. Meta Platforms, Inc.*, Case No. 3:26-cv-04053-VC

Dear Judge Hixson:

Plaintiffs and Non-Party Anthropic PBC ("Anthropic") respectfully submit this joint letter brief regarding Plaintiffs' motion to compel Anthropic to comply with subpoenas served on it in the above-captioned actions. The parties have met and conferred, including on August 17, 2026, but were unable to reach resolution.

**Plaintiffs' Position**

The documents and testimony sought from Anthropic PBC ("Anthropic") by Plaintiffs in these coordinated actions are relevant and material to defeating Meta's fair use defense, and the Court should compel compliance with the subpoenas in full.[1] To the extent the Court orders any narrowing, it should nonetheless require Anthropic (which has no doubt already responded to similar discovery in the recently resolved class action concerning similar alleged infringement) to provide meaningful documents that go to the heart of Plaintiffs' requests. Plaintiffs' requests encompass three categories that are highly relevant here, and will allow Plaintiffs to present proof of evidence that Judge Chhabria found missing from the record or otherwise lacking in *Kadrey*:

**1. Market Substitution Evidence (Requests 1–2 and Topics 1–2)**

Meta's response to Interrogatory No. 16 in the *Kadrey* case narrowed the relevant market and then declared it undisturbed: "[t]he Meta Language Models and their outputs do not serve as a market substitute for the Plaintiffs' asserted works, do not compete with those works, and do not harm the value of Plaintiffs' asserted works." Meta's Second Further Suppl. & Am. Resps. & Objs. to Pls.' Second Set of Interrogatories (No. 16) at 11, *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (N.D. Cal.), ECF No. 690-2 ("Meta Rog. Resp."). That contention does not dispose of the fourth factor, which does not ask about the defendant's conduct alone.

Market harm is "undoubtedly the single most important element of fair use." *Harper & Row Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 566 (1985). Applying *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994), the Ninth Circuit holds that this analysis "encompasses both (1) the extent of market harm caused by the particular actions of the alleged infringer, and (2) whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market." *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1163 (9th Cir. 2022).

The premise of that second inquiry is that the defendant's conduct is widespread; the *effect* of that conduct is what must be proved. The factor asks about "conduct of the sort engaged in by the defendant"—a category of conduct, not a single defendant. Courts draw inferences when better evidence is unavailable; no case holds that actual evidence is irrelevant or less probative than assumptions borne of inference; indeed, fair use defendants may prevail where plaintiffs fail to offer "quantifiable evidence" of market harm. *Am. Soc. for Testing and Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1271 (D.C. Cir. 2023). Anthropic trained on books taken from the same shadow-library ecosystem Meta drew from, and its denial concedes as much: it says only that no "currently available" Claude model was trained on shadow-library text. But *Bartz* made clear that Anthropic used materials from pirated libraries to train at least *some* of its models, 787 F. Supp. 3d 1007, 1014–18 (N.D. Cal. 2025), and Plaintiffs will agree to accordingly limit these Requests and Topics to the models that were trained on shadow-library data. Proof of what conduct of this sort has actually done to the market for books is stronger than a hypothesis about what it might do.

Requests and Topics 1 and 2 are directed at such evidence. They seek Anthropic's documents and testimony on the capacity of its models to "generate, continue, summarize,

[1] The "Requests" and "Topics" discussed below refer to the requests in each document subpoena, and the topics for examination in each deposition subpoena, respectively.

transform, imitate, or reproduce" literary content, together with Anthropic's own testing and benchmarking of that capacity—expressly including its assessments of "the extent to which model-generated output may substitute for or compete with human-authored works." That Claude is publicly available is no answer: prompting a deployed model cannot produce Anthropic's own benchmarks or its own conclusions about substitution. Anthropic says the missing evidence "may exist in the market, but Anthropic does not hold it." But its own substitution testing is that evidence. Plaintiffs will further limit these Requests and Topics to evaluations concerning literary and book-length text.

Finally, two of Anthropic's premises are wrong. Anthropic asserts that "Plaintiffs concede that they have suffered no lost sales, no lost licenses, and no other financial harm from Meta's models," citing *Kadrey*, ECF No. 690-2 at 11–14. Those pages are Meta's own interpretation of discovery responses and testimony from the *Kadrey* plaintiffs; Plaintiffs in the instant cases have conceded no such thing. Anthropic's claim that the inquiry is "hypothetical by design" also confuses premise with proof: the test assumes the conduct is widespread and asks what follows, which is a question of fact. Judge Chhabria made clear in *Kadrey* that the logical inference of market harm, as was held sufficient in *Hachette*, would not hold in these cases, requiring instead "empirical evidence," not "speculation." *Kadrey*, 788 F. Supp. 3d at 1057. Evidence of how Anthropic (which engaged in the conduct of the same sort as Meta) understood its products' ability to substitute for or compete with human-authored works is the opposite of speculation.

**2. Licensing Evidence (Request 3 and Topic 3)**

Meta's fair use position also rests on an empirical claim about the industry: that "there was no market for licensing Plaintiffs' literary books as training data for LLMs . . . and there is no such market today," Meta Rog. Resp. at 14; that "any particular book has no independent value as training data and/or is interchangeable with countless other books," *id.* at 14–15; and that it "would . . . be impractical, if not impossible, for companies developing LLMs to attempt to negotiate licenses with each individual book rights holder," *id.* at 15.

Those are falsifiable assertions, and licenses taken by other participants are evidence that the "potential market" for licensing exists. And although Judge Chhabria was unpersuaded by this potential market, the Ninth Circuit has yet to address the issue, and Plaintiffs seek to litigate it on a fulsome record. Indeed, Judge Chhabria acknowledged that licensing is not wholly irrelevant, holding that if Meta's use was *not* fair use, "LLM developers . . . won't need to stop using copyrighted works to train their models. They will need only to pay rightsholders for licenses for that training." *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1059 (N.D. Cal. 2025).

Request 3 and Topic 3 seek Anthropic's documents and testimony concerning its "licensing and efforts to license books and other content for AI training." The executed agreements Anthropic agreed to produce will show the market exists and on what terms. But Meta asserts more than the absence of deals: it asserts that licensing was "impractical, if not impossible," and that books have "no independent value" and are "interchangeable." Only the negotiations show what rightsholders were asked to give, what developers were willing to pay, and which deals failed and why. The cases Anthropic cites below, *Tremblay* and *Planner5D*, involved duplicative detail regarding executed licenses, not rebuttal of a claim that no bargain was possible. Plaintiffs will limit the request to unconsummated book-related negotiations and to custodians Anthropic already identified.

**3. Torrenting Evidence (Requests 4–5 and Topics 4–5)**

Meta defends its use of BitTorrent on grounds of necessity and efficiency, responding that it "used BitTorrent because it was a more efficient and reliable means of obtaining the datasets, and in the case of Anna's Archive, those datasets were only available in bulk through torrent downloads." Meta Rog. Resp. at 16. It further contends that "the potential for a peer to upload data to other peers in the network is an inherent characteristic of the BitTorrent protocol," so that any making available of Plaintiffs' works during the download "was part-and-parcel of the download of Plaintiffs' works in furtherance of Meta's transformative fair use purpose." *Id.*

Necessity and efficiency are comparative propositions, and a defendant who says *additional* infringement was the only workable route invites proof that it was not. Requests and Topics 4 and 5 seek the identity, versions, and configurations of any torrent client Anthropic used, and Anthropic's efforts to "prevent, limit, or mitigate uploading, re-uploading, seeding, peer exchange, or otherwise making Data available to other users." *Waymo*, on which Anthropic relies below, is not on point: Plaintiffs do not offer Anthropic's practices as industry custom, but to test Meta's representation that torrenting was the only efficient route and that uploading was inherent to it. And the *Kadrey* record Anthropic invokes shows what Meta chose, not what was available to choose. If Anthropic will stipulate to how it acquired book data and whether it suppressed uploading, Plaintiffs will accept such information in satisfaction of Requests and Topics 4 and 5.

If Anthropic built comparable corpora without torrenting, Meta cannot maintain that torrenting was necessary. If Anthropic torrented but configured its clients to suppress uploading, then the redistribution Meta calls an "inherent characteristic" of the protocol was a setting Meta declined to change—a point already suggested by the finding that a Meta engineer "wrote a script to prevent seeding, but apparently not leeching." *Kadrey*, 788 F. Supp. 3d at 1041. The Court held that "[b]ecause Meta's ultimate use of the plaintiffs' books was transformative, so too was Meta's downloading of those books," *id.* at 1048, and Meta now extends that reasoning to the reuploading that occurred while it obtained them.

**Anthropic's Position**

Plaintiffs' subpoenas demand five broad categories of documents spanning nearly every aspect of non-party Anthropic's core business. All are untethered to Meta's conduct or Plaintiffs' works. Compliance would require Anthropic to collect, isolate, and review several hundreds of thousands of documents for responsiveness, then prepare at least three witnesses for the wide-ranging span of deposition topics. Rule 45 does not permit that burden against a company that is not named, whose products are not accused, and whose conduct is not at issue. The requests are irrelevant to Plaintiffs' claims against Meta, disproportionate to the needs of the case, and based on a mistaken view of what fair use requires. The subpoenas should be quashed.

**Nos. 1 & 2**. Plaintiffs seek all documents and testimony concerning the capability of any Claude model to generate virtually any content, together with all documents and testimony regarding every test, evaluation, study, analysis, and report bearing on those capabilities. That is essentially a full product-development audit of every model Anthropic has ever built.

Plaintiffs rely on Meta's interrogatory responses showing a series of author plaintiffs who confirm no lost sales, no lost licenses, and no other financial harm from Meta's models. *See Kadrey*, ECF No. 690-2 at 11:28–14:21. Apparently lacking that evidence, Plaintiffs say they are hunting for

proof of "market dilution" that Judge Chhabria found missing in *Kadrey*, and they invoke *Campbell*'s instruction to consider whether "unrestricted and widespread conduct of the sort engaged in by the defendant" would harm the market for the specific works at issue. 510 U.S. at 590. On Plaintiffs' strained reading, that hypothetical inquiry exposes any AI developer of Plaintiffs' choosing to a wide-ranging document and testimonial audit of its products and practices. The reading finds no support in the case law they cite, in *Kadrey*, or fair use principles.

Plaintiffs cite cases addressing the hypothetical inquiry but none suggesting that the proof must, should, or even may come from industry peers.[2] The inquiry is hypothetical by design: it assumes Meta's use of the works is widespread and asks what that would do to the market for the works. Plaintiffs instead seek burdensome discovery from a non-party whose products are not accused to prove what the question already assumes. That is the hallmark of disproportionality.

Indeed, Judge Chhabria identified precisely what the *Kadrey* record lacked, and it was not evidence about other AI developers. Having identified market dilution as a potential theory, he set out the questions it raised and that plaintiffs had left unanswered: whether Llama can generate books; what the AI-generated books are and whether they compete with the particular works at issue; what effect that competition has on sales of the books it competes with; and how that market threat compares to a world where Meta could not use the plaintiffs' books for training. 788 F. Supp. 3d at 1055–56. He faulted the plaintiffs for offering no analysis of the markets for their own books and not showing that the AI-generated books already on the market compete in them. *Id*. at 1056. None of Judge Chhabria's questions asks what a non-party's models can do, let alone to the level of detail Plaintiffs' demand. Each question in *Kadrey* is directed at Meta's model and at the market for Plaintiffs' works, and "***not just any LLM.***" *Id*. at 1057 (emphasis added). *Kadrey*'s reference to "empirical evidence" versus "speculation" was not about proof of other LLM's capabilities—it was, again, about the failure to show that Meta's copying caused harm to the plaintiffs' market. *Id*. at 1056 ("plaintiffs presented no empirical evidence . . . that ***the copying*** has already caused market harm"). How Anthropic "understood its products' ability" in the abstract—a different company building a different product—does nothing to fill the market harm evidentiary failures *Kadrey* identified, let alone as it relates to *Meta's copying*.

The evidence found lacking in *Kadrey* may exist in the market, but Anthropic does not hold it. If authors are using Meta's tools to create competing works, that population of works and its market effect is discoverable through the authors who created the AI generated works, the publishers who published them, the distributors who carried them, and the retailers who sold them. Anthropic is none of those. Indeed, if Plaintiffs want to know what Claude can generate—and even if that were relevant—Claude is publicly available, and they need no subpoena to test its capabilities. Burdening Anthropic for a product-development audit to prove abstract model capabilities does

[2] *Hachette* resolved that inquiry with no evidence about Internet Archive's peers, relying instead on common sense and the logical inference observations. 115 F.4th at 193. *McGucken* did the same without any evidence of what other market participants were doing. 42 F.4th at 1163. *ASTM* faulted plaintiff for lack of "quantifiable evidence" of "plaintiffs' revenues," not for lack of evidence on other industry participants' activities. 82 F.4th at 1271.

not substitute for the market harm evidence *Kadrey* found lacking, is not relevant to fair use, and is disproportionate to the needs of the case.[3]

**No. 3.** Plaintiffs seek all documents and testimony concerning Anthropic's licensing of books for AI training. Anthropic has now been subpoenaed twice in these related actions on this subject and has already produced responsive documents, which show the relevant contractual who, what, when, and on what terms. What remains is Plaintiffs' demand for negotiation communications.

That demand fails at the threshold. To start, Plaintiffs' licensing theory has been rejected as a matter of law by both courts in this circuit that have addressed it. *Kadrey*, 788 F. Supp. 3d at 1052 ("whether such a market exists or is likely to develop is irrelevant, because this market is not one that the plaintiffs are legally entitled to monopolize"); *Bartz v. Anthropic*, 787 F. Supp. 3d 1007, 1032 (N.D. Cal. 2025) ("such a [licensing] market for that use is not one the Copyright Act entitles Authors to exploit"). Aside from the shaky ground of Plaintiffs' legal theory, the demand for negotiations of failed efforts has been routinely rejected in both non-party and party discovery. *See Tremblay v. OpenAI, Inc.*, No. 23-cv-3223-AMO, 2025 WL 729674, at *2 (N.D. Cal. Mar. 6, 2025) (declining to order licensing discovery from non-party beyond the executed agreements); *UAB "Planner5D" v. Meta Platforms, Inc.*, No. 19-cv-3132-WHO, 2024 WL 4190052, at *1–2 (N.D. Cal. May 21, 2024) (rejecting negotiations for party discovery). As Plaintiffs concede, the *Kadrey* decision describes what would follow if Meta lost on fair use. It leaves undisturbed the same opinion's holding that whether a licensing market "exists or is likely to develop is irrelevant." *Kadrey*, 788 F. Supp. 3d at 1052. Nor does it matter that *Tremblay* and *Planner5D* involved executed licenses. Communications about deals that never closed supply negotiating positions, not facts regarding a hypothetical licensing market.

Anthropic agreed to produce the executed agreements it produced in response to the subpoena in the related *Entrepreneur* matter, together with a custodial declaration authenticating the records. The *Entrepreneur* plaintiff found those agreements sufficient without any negotiations and without subjecting Anthropic to an unnecessary deposition. Any request to go further would pose undue burden on Anthropic: licensing negotiations generate no contract to collect, rather, they live in years of custodial email and other ESI, notes, and drafts, and a search for any responsive documents would require Anthropic to review thousands of documents.

**Nos. 4 & 5.** Plaintiffs demand the identity, versions, and configurations of any torrent client Anthropic used, plus testimony on Anthropic's efforts to limit seeding. But whether Meta's torrenting was necessary, and whether Meta could have limited its uploading, turn on Meta's data

[3] The Requests should be quashed without even reaching the factual premise, which is also wrong: Plaintiffs claim Claude is "trained on books taken from the same shadow-library ecosystem Meta drew from." That is not true. No publicly available Claude model was trained on text from the *Bartz* class repositories: LibGen and PiLiMi. Such text was only used for early research models that were not released publicly. And Anthropic separately uses output filtering designed to prevent its models from reproducing copyrighted works. This illustrates the deeper problem with Plaintiffs' theory. AI developers differ in what data they acquire, how they acquire it, how they train, and what guardrails they impose. A hypothetical inquiry into widespread conduct tolerates none of those distinctions because it assumes them away. Plaintiffs would have to establish that Anthropic's practices resemble Meta's before anything about Claude could bear on Meta's defense—which they have not done and cannot do—and every such comparison would open a new front of discovery into another company's models, data, and design choices, in a case about neither.

needs, Meta's sources, and the software Meta chose and configured. *See Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-939-WHA, 2017 WL 2929439, at *3–4 (N.D. Cal. July 7, 2017) (quashing subpoenas seeking to establish industry practice through a non-party's own practices). It makes no difference that Plaintiffs offer Anthropic's practices to test Meta's representations rather than as evidence of industry practice. Either way Plaintiffs improperly ask Anthropic to provide discovery on its internal practices so that Meta's factual assertion can be impeached. Nor is the information Plaintiff is seeking relevant to its claims. Plaintiffs do not contend that Anthropic used the same client as Meta. Clients are not interchangeable, they differ in their default upload settings, in whether those defaults can be reconfigured, and in their capacity to suppress uploading during and after a download; the same client also behaves differently from version to version. What Anthropic's client allowed shows nothing about what Meta's did. Regardless, Plaintiffs can get what they need without Anthropic. Whether a client can be configured to limit uploading is a question of software mechanics an expert can answer from publicly documented settings.[4] What Meta's client allowed, how Meta configured it, and what alternatives Meta considered are discoverable from Meta. Rule 26(b)(2)(C)(i) requires Plaintiffs to take those routes, and Rule 45 forbids the one they chose. *See Convolve, Inc. v. Dell, Inc.*, No. 10-cv-80071-WHA, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) (requiring a non-party to act as an unpaid expert witness abuses the subpoena power).

---

[4] The *Kadrey* record contains that evidence: the fair use order describes BitTorrent's default settings, testimony on configuring those settings, and the script a Meta engineer wrote to prevent seeding. 788 F. Supp. 3d at 1041.

Respectfully,

WHITE & CASE LLP[5]

*/s/ Andy LeGolvan*
Andy LeGolvan

*Counsel for Non-Party Anthropic PBC*

FREEDMAN NORMAND FRIEDLAND LLP

*/s/ Kyle W. Roche/*
Kyle Roche *(pro hac vice)*

*Counsel for Plaintiffs*

[5] All parties whose electronic signatures are included herein have consented to the filing of this document.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| CHICKEN SOUP FOR THE SOUL, LLC, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 3:26-cv-02333-VC |
| META PLATFORMS, INC., | ) | |
| | ) | |
| *Defendant* | ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: ANTHROPIC, PBC

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A

| Place: Freedman Normand Friedland LLP<br>155 E. 44th Street, Suite 915<br>New York, NY 10017 | Date and Time:<br>August 14, 2026 at 9:00 a.m |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 07/24/2026

*CLERK OF COURT*

OR

_________________________ /s/ Kyle Roche

*Signature of Clerk or Deputy Clerk* *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff, who issues or requests this subpoena, are:

Kyle W. Roche, 155 E. 44th Street, Suite 915, New York, New York 10017, kroche@fnf.law, (646) 494-290

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 3:26-cv-02333-VC

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________
______________________________________________
______________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________
______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0 .

I declare under penalty of perjury that this information is true.

Date: ____________ ______________________________

*Server's signature*

______________________________

*Printed name and title*

______________________________

*Server's address*

Additional information regarding attempted service, etc.:

Print | Save As... | Add Attachment | Reset

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Elizabeth Brannen (SBN 226234)
ebrannen@stris.com
John Stokes (SBN 310847)
jstokes@stris.com
Lauren Martin (SBN 294367)
lmartin@stris.com
**STRIS & MAHER LLP**
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
T: (213) 995-6800
F: (213) 261-0299

Christopher M. Rigali *(pro hac vice)*
crigali@stris.com
Jacqueline Sahlberg (*pro hac vice*)
jsahlberg@stris.com
**STRIS & MAHER LLP**
1601 K Street NW Ste 1050
Washington, DC 20006
T: (202) 800-5749

Kyle Roche (*pro hac vice*)
kroche@fnf.law
Devin (Velvel) Freedman (*pro hac vice* forthcoming)
vel@fnf.law
Alex Potter (*pro hac vice*)
apotter@fnf.law
**FREEDMAN NORMAND FRIEDLAND LLP**
155 E. 44th Street, Ste 915
New York, NY 10017
T: (646) 494-2900

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

CHICKEN SOUP FOR THE SOUL, LLC,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 3:26-cv-02333-VC

**PLAINTIFF'S NOTICE OF SUBPOENA AND SUBPOENA TO ANTHROPIC**

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Plaintiff, by and through their undersigned attorneys, intend to serve the attached Subpoena upon Anthropic to produce the information described in the Schedule A attached thereto at the time and place specified on the Subpoena or a time and place as counsel may agree.

DATED: July 24, 2026

**FREEDMAN NORMAND FRIEDLAND LLP**

*/s/ Kyle Roche*


Kyle Roche (*pro hac vice* )
Devin (Velvel) Freedman (*pro hac vice*)
Alex Potter (*pro hac vice*)
**FREEDMAN NORMAND FRIEDLAND LLP**
155 E. 44th Street, Suite 915
New York NY 10017
T: (646) 494-2900
vel@fnf.law
kroche@fnf.law
apotter@fnf.law

Elizabeth Brannen (SBN 226234)
John Stokes (SBN 310847)
Lauren Martin (SBN 294367)
**STRIS & MAHER LLP**
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
T: (213) 995-6800
F: (213) 261-0299
ebrannen@stris.com
jstokes@stris.com
lmartin@stris.com

Christopher M. Rigali (*pro hac vice*)
Jacqueline Sahlberg (*pro hac vice*)
1717 K St NW Suite 900
Washington, DC 20006
Phone: (202) 800-5749
crigali@stris.com
jsahlberg@stris.com


*Counsel for Plaintiff*

**SCHEDULE A**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the following is a list of requests ("Requests") sought from the recipient of this Subpoena. These Requests seek information to support Plaintiff's claims as alleged in Plaintiffs' Amended Complaint in Chicken Soup for the Soul, LLC v. Meta Platforms Inc., Case No. 3:26-cv-02333-VC (N.D. Cal. 2026).

**DEFINITIONS**

1. As used herein, the following words, terms, and phrases—whether singular or plural, or in an alternate verb tense—shall have the meanings ascribed below. Defined terms may not be capitalized or made uppercase. The given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

2. "All," "Or," and "And" should be understood to include and encompass "any"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

3. "BitTorrent" means the peer-to-peer file sharing protocol of the same name, as originally specified in https://bittorrent.org/beps/bep_0003.html, and implemented by software such as LibTorrent.

4. "Communications" means oral or written communications of any kind, communicated directly or indirectly, including, without limitation inquiries, complaints, discussions, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondences, memoranda, notes, telegrams, facsimiles, electronic mail (e-mail) messages and attachments, instant or direct messages (including SMS messages, text messages, Apple iMessages, Slack messages, Teams messages), memoranda, documents, writings, or other forms of communications. The term "Communications" includes instances where one party disseminates information that the other party receives but does not respond to.

5. "Complaint" refers to the operative complaint at the time documents are produced in response to these requests. At the time of service, the currently operative Complaint is Plaintiff's Amended Complaint. ECF No. 63.

6. "Concerning," whether capitalized or not, refers to and includes "constituting," "evidencing," "supporting," "regarding," "mentioning," "reflecting," "concerning," "relating to," "referring to," "pertaining to," "alluding to," "responding to," "proving," "discussing," "assessing," "disproving," "connected with," "commenting on," "about," "showing," "describing," and/or logically or factually dealing with the matter described in the request in which the term appears.

7. "Data" means content, files, information, metadata, software, or any other digital material including Documents, including copies and backups of any of the foregoing digital material, whether in custodial or non-custodial sources.

8. "Document" is used in its broadest sense allowed by Rule 34(a) of the Federal Rules of Civil Procedure and includes, but is not limited to, any writings, drawings, graphs, handwriting, typewriting, printing, photostatting, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.

This includes:

- The originals, drafts and All non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise;

- Booklets, brochures, pamphlets, circulars, notices, periodicals, papers, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, financial calculations and representations, invoices, accounting and diary entries, inventory sheets, diaries, appointment books or calendars, teletypes, telefaxes, thermafaxes, ledgers, trial balances, correspondence, telegrams, press releases, advertisements, notes, working papers, drawings, schedules, tabulations, projections, information or programs stored in a computer (whether or not ever printed out or displayed), and All drafts, alterations, modifications, changes or amendments of any of the foregoing;

- Graphic or aural representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotapes, recordings, drawing, charts and motion pictures;

- All letters, words, pictures, sounds, or symbols, or combinations thereof stored in or on any electronic, mechanical, magnetic, or optical device including, but not limited to: (i) computer data storage devices (servers, laptops hard-drives, flash drives, discs, magnetic cards, and the like), (ii) the internet or "the Cloud" (such as e-mail, web posts, social media posts, internet pages, etc.), and (iii) information stored on cell phones.

9. "Including" and "Includes," whether capitalized or not, are used to provide examples of certain types of information and should not be construed as limiting a request or definition in any way. The terms "including" and "includes" shall be construed as if followed by the phrase "but not limited to."

10. "Online Database(s)" means the type of databases described in the Complaint—online databases with copyrighted material or books including but not limited to Books3, b3g, Z-Library (aka B-ok), Library Genesis (aka LibGen), Bibliotik, Anna's Archive, Internet Archive, DuXiu, The Pile, and WeLib. The term encompasses all versions, updates, augmentations, or modifications of such databases, and the distribution, provision, or sharing of copyrighted material or books by other users, or peers, via the torrent protocol or network.

11. "Relevant Period" includes and encompasses all times relevant to the acts and failures to act which are relevant to the Complaint.

12. "Torrent," "Torrented," and "Torrenting" mean peer-to-peer file sharing, including the use of Torrent Client(s), in which users download and/or upload pieces of digital files from and/or to multiple different users (peers) in a network simultaneously.

13. "Torrent Client(s)" means a network or application, including but not limited to implementations of the BitTorrent protocol, designed for sharing digital data and that was used by Meta to obtain data from any Online Database.

14. "Torrented Data" means Data acquired via Torrenting of Online Databases.

15. "You" or "Your" refers to Anthropic PBC, or entities, agents, or individuals under the employ of or otherwise controlled by Anthropic PBC, or entities owned in whole or in part by Anthropic PBC.

**INSTRUCTIONS**

1. Please separately respond to each item by stating (a) you will produce, (b) you are presently unable to produce, or (c) you object to production.

2. These Requests for Productions should be deemed continuing such that if You subsequently discover or obtain possession, custody, or control of any document or ESI previously requested or required to be produced, and supplemental productions should be provided as additional documents become available.

3. If You claim You are unable to produce a Document, you must state whether that inability is because the Document never existed; has been destroyed, lost, misplaced or stolen; or has never been or is no longer in your possession, custody or control. Such a statement must further set forth the name and address of any person or entity that you know or believe to have possession, custody or control of that item or category of item. If any Document responsive to a request has been destroyed, produce all documents describing or referencing: (1) the contents of the lost or destroyed document; (2) all locations in which any copy of the lost or destroyed Document had been maintained; (3) the date of any such loss or destruction to the extent known; (4) the name of each person who ordered, authorized and carried out the destruction of any lost or destroyed Document; (5) all document retention and destruction policies in effect at the time any requested Document was destroyed; and (6) all efforts made to locate any responsive Document alleged to have been lost or destroyed.

4. If You object to any item or category of item, Your response shall (a) identify with particularity each document or thing to which the objection is made and (b) set forth clearly the extent of, and specific ground for, the objection; and You should respond to the Request to the extent it is not objectionable.

5. If You object that a Document is covered by the attorney-client or other privilege, or is work-product, You shall provide a Privilege Log containing: (1) the name of the Document; (2) the name and address of the person(s) who prepared it; (3) the person(s) to whom it was directed or circulated; (4) the date on which the Document was prepared or transmitted; (5) the name and address of the person(s) now in possession of the Document; (6) the description of the subject matter of the Document; and (7) the specific nature of the privilege claimed, including the reasons and each and every fact supporting the withholding, and legal basis sufficient to determine whether the claim of privilege is valid with respect to the Document (without revealing privileged information).

**REQUESTS FOR PRODUCTION**

1. All Documents and Communications Concerning the ability or capability of any of Your artificial-intelligence models, including any version of Claude, to generate, continue, summarize, transform, imitate, or reproduce literary content of different types or forms, including fiction (including novels and genre fiction), nonfiction (including biographies, memoirs, essays, and journalism), short-form works (including short stories and articles), textbooks, academic or educational works, reference works, poetry, drama, and instructional or technical works.

2. All Documents and Communications Concerning any testing, evaluation, benchmark, study, analysis, report, or comparison of the abilities or capabilities identified in Request No. 1, including assessments of output length, quality, coherence, creativity, factual accuracy, genre or style fidelity, similarity to existing works or authors, and the extent to which model-generated output may substitute for or compete with human-authored works.

3. All Documents and Communications Concerning Your licensing and efforts to license books and other content for AI training.

4. Documents and Communications sufficient to identify each torrenting application, torrent software version, implementation, library, and/or Torrent Client You used to obtain Data from Online Databases from January 1, 2019 to the present.

5. All Documents and Communications, including configuration files, settings registries, and similar records, Concerning Your efforts to prevent, limit, or mitigate uploading, re-uploading, seeding, peer exchange, leeching, or otherwise making Data available to other users

during or after the Torrenting process, including by altering configurations and settings of Torrent Clients, devices, servers, virtual machines, networks, cloud environments, or storage systems.

6. Documents sufficient to authenticate each Document produced or to be produced by You in response to this Subpoena or to identify the person or persons with knowledge necessary to authenticate each such Document.

# CERTIFICATE OF SERVICE

**COURT:** United States District Court, Northern District of California

**CASE NAME:** *Chicken Soup for the Soul, LLC v. Meta Platforms, Inc.*

**CASE NUMBER: 3:26-cv-02333-VC**

I, the undersigned, am employed by Freedman Normand Friedland LLP. My business address is 155 E. 44th St., Suite 915 New York, NY 10017. I am over the age of eighteen and not a party to this action.

On July 24, 2026, I caused the following documents to be served by email upon the parties listed on the attached Service List:

- **PLAINTIFF'S NOTICE OF SUBPOENA AND SUBPOENA TO ANTHROPIC**

I declare under penalty of perjury that the foregoing is true and correct.

Executed: July 24, 2026

**FREEDMAN NORMAND FRIEDLAND LLP**

*/s/ Kyle Roche*
Kyle Roche

## SERVICE LIST

**DUNN ISAACSON RHEE LLP**
Karen L. Dunn (pro hac vice)
Jessica E. Phillips (pro hac vice)
Kyle N. Smith (pro hac vice)
401 9th Street NW Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

**COOLEY LLP**
Bobby A. Ghajar (198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Mark R. Weinstein (193043)
Elizabeth Lee Stameshkin (260865)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: mweinstein@cooley.com
lstameshkin@cooley.com

Kathleen R. Hartnett (314267)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com

Phillip E. Morton (pro hac vice)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 728-7055
pmorton@cooley.com

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Angela L. Dunning (212047)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*

**WHITE & CASE LLP**
YAR R. CHAIKOVSKY (CA 175421)
yar.chaikovsky@whitecase.com
ANDY LEGOLVAN (CA 292520)
andy.legolvan@whitecase.com
AMIR JABBARI (CA 339097)
amir.jabbari@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Attorneys for
Non-Party Anthropic PBC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHICKEN SOUP FOR THE SOUL, LLC,<br>Plaintiff,<br>v.<br>META PLATFORMS, INC.,<br>Defendant. | Case No. 3:26-cv-02333-VC<br>**NON-PARTY ANTHROPIC PBC'S RESPONSES AND OBJECTIONS TO PLAINTIFF CHICKEN SOUP FOR THE SOUL, LLC'S SUBPOENA DUCES TECUM** |

Non-Party Anthropic PBC ("Anthropic") provides the following objections and responses to the Subpoena Duces Tecum issued by Plaintiff Chicken Soup for the Soul, LLC ("Chicken Soup") dated July 24, 2026. Anthropic was served with the subpoena on July 27, 2026. The parties agreed on August 10, 2026 that Anthropic's time to respond to the subpoena would be extended to August 21, 2026.

## GENERAL OBJECTIONS

1. Anthropic is a non-party. Anthropic objects to the Subpoena to the extent it seeks documents concerning Anthropic's own models, data-acquisition practices, and licensing, none of which is relevant to the claims against Meta in this action or proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); 45(d).

2. Anthropic objects to the Instructions to the extent they impose obligations beyond Rule 45. Anthropic's responses shall not be construed as agreeing expressly or impliedly to follow those Instructions.

3. Anthropic objects to the terms "You" and "Your" as overbroad and vague to the extent defined to include entities owned in whole or in part by Anthropic PBC. Anthropic responds only for Anthropic PBC.

4. Anthropic objects to the definitions of "Online Databases," "Data," "Concerning," and "Relevant Period" as overbroad, vague, argumentative, and assuming disputed facts.

5. Anthropic objects to the extent the Subpoena seeks privileged, work-product, trade-secret, or confidential commercial information. Fed. R. Civ. P. 45(d)(3)(B)(i). Anthropic does not consent to the designated place of compliance and reserves all rights regarding the proper place of compliance and forum. Anthropic serves these responses without waiving any objection and expressly reserves its right to move to quash or modify the Subpoena and for a protective order.

6. Anthropic objects to each request to the extent it seeks information that is not in Anthropic's possession, custody, or control.

7. The General Objections set forth above are made as to the matters that are clearly objectionable from the face of the requests. These objections are made without prejudice to and without waiver of Anthropic's right to object on all appropriate grounds to the specific information

sought by each request. Anthropic's response to any request is not a waiver of its objections or its right to object to any additional, supplemental, or further request, or any part thereof.

**SPECIFIC OBJECTIONS AND RESPONSES**

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications Concerning the ability or capability of any of Your artificial-intelligence models, including any version of Claude, to generate, continue, summarize, transform, imitate, or reproduce literary content of different types or forms, including fiction (including novels and genre fiction), nonfiction (including biographies, memoirs, essays, and journalism), short-form works (including short stories and articles), textbooks, academic or educational works, reference works, poetry, drama, and instructional or technical works.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Anthropic incorporates by reference the General Objections above.

Anthropic objects to this Request as seeking documents that are not relevant to any claim or defense in this action, which concerns Meta's Llama models and Meta's conduct. See Am. Compl. ¶¶ 2, 87-88. The capabilities of Anthropic's Claude models have no bearing on whether Meta infringed the Chicken Soup Works. Under Rule 26(b)(1) and Rule 45(d)(1), the Request is neither relevant to the parties' dispute nor proportional to the needs of a case to which Anthropic is not a party.

Anthropic further objects to this Request as overbroad, vague, and ambiguous. The Request seeks "All Documents and Communications Concerning the ability or capability" of "any" of Anthropic's models, across an open-ended list of functions ("generate, continue, summarize, transform, imitate, or reproduce") and content types, with no limitation as to time. Read against the Subpoena's expansive definition of "Concerning," the Request would reach substantially every internal document that touches on model capability. Anthropic further objects to the terms "ability or capability," "literary content," and "imitate" as vague and ambiguous.

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. Anthropic is not accused of wrongdoing in this action, and no claim against Meta turns on Anthropic's conduct. The Request would require Anthropic to search for and

review documents touching virtually every aspect of its models' capabilities—a burden disproportionate to any bearing those documents could have on Chicken Soup's claims against Meta.

Anthropic further objects that the Request seeks Anthropic's trade-secret and confidential commercial information, including the design and performance of its proprietary models. Fed. R. Civ. P. 45(d)(3)(B)(i). Anthropic further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

In view of the foregoing objections, Anthropic will not be producing documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Communications Concerning any testing, evaluation, benchmark, study, analysis, report, or comparison of the abilities or capabilities identified in Request No. 1, including assessments of output length, quality, coherence, creativity, factual accuracy, genre or style fidelity, similarity to existing works or authors, and the extent to which model-generated output may substitute for or compete with human-authored works.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Anthropic incorporates by reference its General Objections.

Anthropic objects to this Request as seeking documents that are not relevant to any claim or defense in this action, which concerns Meta's Llama models and Meta's conduct. See Am. Compl. ¶¶ 87–88. Anthropic's own testing and benchmarking of its models says nothing about Meta's alleged infringement.

Anthropic further objects to this Request as overbroad, vague, and ambiguous. The Request seeks "All Documents and Communications Concerning any testing, evaluation, benchmark, study, analysis, report, or comparison" of an open-ended list of qualities—output length, quality, coherence, creativity, factual accuracy, genre or style fidelity, similarity to existing works or authors, and market substitution—with no limitation as to time. So framed, the Request does not permit Anthropic to identify with reasonable particularity the documents sought.

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. Anthropic is not a defendant, and its internal evaluation of its own models has no bearing on Meta's liability. Responding would require Anthropic to search for and review documents covering virtually every aspect of its testing, benchmarking, and evaluation practices—a burden disproportionate to Anthropic's status as a non-party to this dispute.

Anthropic further objects to this Request because it seeks disclosure of an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from study that was not requested by a party. Fed. R. Civ. P. 45(d)(3)(B)(ii). The Request expressly seeks Anthropic's internal "testing, evaluation, benchmark[s], stud[ies], analys[es], report[s], or comparison[s]" of model output, including assessments of "similarity to existing works or authors" and "the extent to which model-generated output may substitute for or compete with human-authored works." Those materials reflect Anthropic's own technical and analytical judgments about generative-AI models generally, not facts concerning Meta's conduct or the Chicken Soup Works.

Anthropic further objects that the Request seeks its trade-secret and confidential commercial information. Anthropic's evaluations and benchmarks of model performance are among its most competitively sensitive materials. Fed. R. Civ. P. 45(d)(3)(B)(i). Anthropic further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

In view of the foregoing objections, Anthropic will not be producing documents responsive to this Request.

**<u>REQUEST FOR PRODUCTION NO. 3</u>:**

All Documents and Communications Concerning Your licensing and efforts to license books and other content for AI training.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 3</u>:**

Anthropic incorporates by reference the General Objections above.

Anthropic objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks trade secret or confidential commercial information of Anthropic and other non-parties, including the terms of business relationships between Anthropic and such

other non-parties. Plaintiff does not have a substantial need for the requested materials that cannot otherwise be met without undue hardship, including from Meta directly.

Anthropic further objects to this Request as overbroad, vague, and ambiguous to the extent it seeks "all Documents and Communications Concerning" Anthropic's "licensing and efforts to license," and to the extent it seeks documents concerning "books and other content for AI training." Anthropic further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

Anthropic further objects to this Request to the extent Chicken Soup contends that Anthropic's licensing agreements or licensing efforts are relevant to the fourth fair-use factor. Whether a market exists for licensing copyrighted works for use in training a non-party's models says nothing about the effect of Meta's alleged use on the market for the Chicken Soup Works. And, as this Court has held, harm from the loss of fees to license a work for a transformative purpose is not cognizable under the fourth factor, precisely because treating it as such would render the analysis circular and favor the rightsholder in every case. *See Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1052 (N.D. Cal. 2025).

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. Anthropic's licensing strategy and negotiations are not relevant to whether Meta infringed the Chicken Soup Works. The Request would require Anthropic to search for and review documents concerning virtually every aspect of its licensing efforts and business relationships with third parties, a burden that outweighs any relevance to Meta's conduct.

Subject to and without waiving its objections, and subject to and pursuant to a protective order entered in this action (or a substantially equivalent protective order permitting a Highly Confidential, Attorneys' Eyes Only designation), Anthropic is willing to produce executed licensing agreements and content-access agreements related to the categories of (a) books and magazines and (b) news and journalism, in each case where the content was used for training of commercially available and generally accessible models, executed from January 1, 2022 to the present. For the avoidance of doubt, agreements for purchases of physical books or media are not deemed responsive.

Anthropic will not produce documents and communications concerning its licensing efforts, negotiations, and strategy, or agreements outside the categories and use described above.

**REQUEST FOR PRODUCTION NO. 4:**

Documents and Communications sufficient to identify each torrenting application, torrent software version, implementation, library, and/or Torrent Client You used to obtain Data from Online Databases from January 1, 2019 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Anthropic incorporates by reference the General Objections above.

The Request is incoherent as applied to Anthropic. The Subpoena defines "Torrent Client" as software "used by Meta" to obtain data from Online Databases. Anthropic does not know the software that Meta used and in any case, any information about Meta's use of any torrenting clients would be exclusively within Meta's possession, if it exists at all.

To the extent the Request instead seeks Anthropic's own data-acquisition tools, that information concerns Anthropic's conduct, not Meta's, and is not relevant to any claim or defense in this action. See Am. Compl. ¶¶ 6-7, 57, 71, 76. Anthropic's acquisition methods are not relevant to Meta's liability.

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. Anthropic's own data-acquisition tools say nothing about how Meta obtained data, and Anthropic is not accused of any wrongdoing in this action. Complying would require Anthropic to search for and review documents covering virtually every aspect of its data-acquisition infrastructure over a seven-year period, a burden disproportionate to any relevance those documents could have to Meta's conduct.

Anthropic further objects that the Request seeks its confidential and competitively sensitive data-acquisition infrastructure. Fed. R. Civ. P. 45(d)(3)(B)(i). The Request is also overbroad as to "each torrenting application, torrent software version, implementation, library, and/or Torrent Client" across the period January 1, 2019 to the present. Anthropic further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

In view of the foregoing objections, Anthropic will not be producing documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications, including configuration files, settings registries, and similar records, Concerning Your efforts to prevent, limit, or mitigate uploading, re-uploading, seeding, peer exchange, leeching, or otherwise making Data available to other users during or after the Torrenting process, including by altering configurations and settings of Torrent Clients, devices, servers, virtual machines, networks, cloud environments, or storage systems.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Anthropic incorporates by reference the General Objections above.

Anthropic objects to this Request as seeking its own technical practices and configurations (its efforts to prevent seeding, leeching, and re-uploading), which bear on Anthropic's conduct, not Meta's. The Complaint's contributory-infringement theory concerns Meta's alleged seeding and leeching. See Am. Compl. ¶¶ 7, 71-73, 99-101. Anthropic's configurations are not relevant to anything Meta has done.

Anthropic further objects to this Request as overbroad and vague to the extent it seeks "All Documents and Communications, including configuration files, settings registries, and similar records, Concerning Your efforts to prevent, limit, or mitigate" an open-ended list of activities across "Torrent Clients, devices, servers, virtual machines, networks, cloud environments, or storage systems," with no limitation as to time.

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. The Complaint's contributory-infringement theory concerns Meta's alleged seeding and leeching, not Anthropic's. Responding would require Anthropic to search for and review documents covering virtually every aspect of its network, device, and storage configurations, a burden that has no connection to any claim against Meta.

Anthropic further objects that the Request seeks its confidential and trade-secret technical information, including its network and storage architecture. Fed. R. Civ. P. 45(d)(3)(B)(i). Anthropic further objects to the extent the Request seeks documents protected by the attorney-client

privilege, the work-product doctrine, or any other privilege or immunity.

In view of the foregoing objections, Anthropic will not be producing documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 6:**

Documents sufficient to authenticate each Document produced or to be produced by You in response to this Subpoena or to identify the person or persons with knowledge necessary to authenticate each such Document.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Anthropic incorporates by reference its General Objections above.

This Request is derivative of Requests Nos. 1-5 and incorporates its objections to each of those Requests. Anthropic further objects to the phrase "sufficient to authenticate" as vague and ambiguous. The Request does not identify any category of existing documents that would "authenticate" another document, and Anthropic does not maintain authentication documents in the ordinary course of business.

In view of the foregoing General and Specific Objections, Anthropic will not be producing documents responsive to this Request. Anthropic is willing, however, to meet and confer regarding authentication of any documents Anthropic produces in response to this Subpoena, in a manner that does not impose unnecessary burden on a non-party, for example, by a custodian-of-records declaration under Federal Rule of Evidence 902(11) in lieu of a deposition.

Dated: August 21, 2026

WHITE & CASE LLP

By: *\/s/ Yar Chaikovsky*
Yar R. Chaikovsky
Andy LeGolvan
Amir Jabbari

Attorneys for Non-Party
Anthropic PBC

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served via email to counsel of record for **CHICKEN SOUP FOR THE SOUL, LLC** in accordance with the Federal Rules of Civil Procedure on August 21, 2026.

*/s/ Yar R. Chaikovsky*
Yar R. Chaikovsky

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| Cambronne, Inc., et al.<br>*Plaintiff*<br>v.<br>Meta Platforms, Inc.<br>*Defendant* | ) | Civil Action No. 3:26-cv-03725 |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Anthropic PBC

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A

| Place: San Francisco, CA | Date and Time: 08/28/2026 9:00 am |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/17/2026

*CLERK OF COURT*

OR

/s/ Kyle W. Roche

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff, who issues or requests this subpoena, are:

Kyle W. Roche, 155 E 44th Street, Suite 915 New York, NY 10017

kroche@fnf.law, 646-494-2900

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 3:26-cv-03725

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❐ I served the subpoena by delivering a copy to the named person as follows: ______________________
______________________________________________ on *(date)* ____________ ; or

❐ I returned the subpoena unexecuted because: ______________________
______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the following is a list of requests ("Requests") sought from the recipient of this Subpoena. These Requests seek information to support Plaintiffs' claims as alleged in Plaintiffs' Second Amended Complaint in Cambronne, Inc., et al. v. Meta Platforms, Inc., Case No. 3:26-cv-03725-VC (N.D. Cal. 2026).

## DEFINITIONS

1. As used herein, the following words, terms, and phrases—whether singular or plural, or in an alternate verb tense—shall have the meanings ascribed below. Defined terms may not be capitalized or made uppercase. The given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

2. "All," "Or," and "And" should be understood to include and encompass "any"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

3. "BitTorrent" means the peer-to-peer file sharing protocol of the same name, as originally specified in https://bittorrent.org/beps/bep_0003.html, and implemented by software such as LibTorrent.

4. "Communications" means oral or written communications of any kind, communicated directly or indirectly, including, without limitation inquiries, complaints, discussions, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondences, memoranda, notes, telegrams, facsimiles, electronic mail (e-mail) messages and attachments, instant or direct messages (including SMS messages, text messages, Apple iMessages, Slack messages, Teams messages), memoranda, documents, writings, or other forms of communications. The term "Communications" includes instances where one party disseminates information that the other party receives but does not respond to.

5. "Complaint" refers to the operative complaint at the time documents are produced in response to these requests. At the time of service, the currently operative Complaint is Plaintiffs' Second Amended Complaint. ECF No. 192.

6. "Concerning," whether capitalized or not, refers to and includes "constituting," "evidencing," "supporting," "regarding," "mentioning," "reflecting," "concerning," "relating to," "referring to," "pertaining to," "alluding to," "responding to," "proving," "discussing," "assessing," "disproving," "connected with," "commenting on," "about," "showing," "describing," and/or logically or factually dealing with the matter described in the request in which the term appears.

7. "Data" means content, files, information, metadata, software, or any other digital material including Documents, including copies and backups of any of the foregoing digital material, whether in custodial or non-custodial sources.

8. "Document" is used in its broadest sense allowed by Rule 34(a) of the Federal Rules of Civil Procedure and includes, but is not limited to, any writings, drawings, graphs, handwriting, typewriting, printing, photostatting, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.

This includes:

- The originals, drafts and All non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise;
- Booklets, brochures, pamphlets, circulars, notices, periodicals, papers, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, financial calculations and representations, invoices, accounting and diary entries, inventory sheets, diaries, appointment books or calendars, teletypes, telefaxes, thermafaxes, ledgers, trial balances, correspondence, telegrams, press releases, advertisements, notes, working papers, drawings, schedules, tabulations, projections, information or programs stored in a computer (whether or not ever printed out or displayed), and All drafts, alterations, modifications, changes or amendments of any of the foregoing;

- Graphic or aural representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotapes, recordings, drawing, charts and motion pictures;
- All letters, words, pictures, sounds, or symbols, or combinations thereof stored in or on any electronic, mechanical, magnetic, or optical device including, but not limited to: (i) computer data storage devices (servers, laptops hard-drives, flash drives, discs, magnetic cards, and the like), (ii) the internet or "the Cloud" (such as e-mail, web posts, social media posts, internet pages, etc.), and (iii) information stored on cell phones.

9. "Including" and "Includes," whether capitalized or not, are used to provide examples of certain types of information and should not be construed as limiting a request or definition in any way. The terms "including" and "includes" shall be construed as if followed by the phrase "but not limited to."

10. "Online Database(s)" means the type of databases described in the Complaint—online databases with copyrighted material or books including but not limited to Books3, b3g, Z-Library (aka B-ok), Library Genesis (aka LibGen), Bibliotik, Anna's Archive, Internet Archive, DuXiu, The Pile, and WeLib. The term encompasses all versions, updates, augmentations, or modifications of such databases, and the distribution, provision, or sharing of copyrighted material or books by other users, or peers, via the torrent protocol or network.

11. "Relevant Period" includes and encompasses all times relevant to the acts and failures to act which are relevant to the Complaint.

12. "Torrent," "Torrented," and "Torrenting" mean peer-to-peer file sharing, including the use of Torrent Client(s), in which users download and/or upload pieces of digital files from and/or to multiple different users (peers) in a network simultaneously.

13. "Torrent Client(s)" means a network or application, including but not limited to implementations of the BitTorrent protocol, designed for sharing digital data and that was used by Meta to obtain data from any Online Database.

14. "Torrented Data" means Data acquired via Torrenting of Online Databases.

15. "You" or "Your" refers to Anthropic PBC, or entities, agents, or individuals under the employ of or otherwise controlled by Anthropic PBC, or entities owned in whole or in part by Anthropic PBC.

**INSTRUCTIONS**

1. Please separately respond to each item by stating (a) you will produce, (b) you are presently unable to produce, or (c) you object to production.

2. These Requests for Productions should be deemed continuing such that if You subsequently discover or obtain possession, custody, or control of any document or ESI previously requested or required to be produced, and supplemental productions should be provided as additional documents become available.

3. If You claim You are unable to produce a Document, you must state whether that inability is because the Document never existed; has been destroyed, lost, misplaced or stolen; or has never been or is no longer in your possession, custody or control. Such a statement must further set forth the name and address of any person or entity that you know or believe to have possession, custody or control of that item or category of item. If any Document responsive to a request has been destroyed, produce all documents describing or referencing: (1) the contents of the lost or destroyed document; (2) all locations in which any copy of the lost or destroyed Document had been maintained; (3) the date of any such loss or destruction to the extent known; (4) the name of each person who ordered, authorized and carried out the destruction of any lost or destroyed Document; (5) all document retention and destruction policies in effect at the time any requested Document was destroyed; and (6) all efforts made to locate any responsive Document alleged to have been lost or destroyed.

4. If You object to any item or category of item, Your response shall (a) identify with particularity each document or thing to which the objection is made and (b) set forth clearly the extent of, and specific ground for, the objection; and You should respond to the Request to the extent it is not objectionable.

5. If You object that a Document is covered by the attorney-client or other privilege, or is work-product, You shall provide a Privilege Log containing: (1) the name of the Document; (2)

the name and address of the person(s) who prepared it; (3) the person(s) to whom it was directed or circulated; (4) the date on which the Document was prepared or transmitted; (5) the name and address of the person(s) now in possession of the Document; (6) the description of the subject matter of the Document; and (7) the specific nature of the privilege claimed, including the reasons and each and every fact supporting the withholding, and legal basis sufficient to determine whether the claim of privilege is valid with respect to the Document (without revealing privileged information).

## REQUESTS FOR PRODUCTION

1. All Documents and Communications Concerning the ability or capability of any of Your artificial-intelligence models, including any version of Claude, to generate, continue, summarize, transform, imitate, or reproduce literary content of different types or forms, including fiction (including novels and genre fiction), nonfiction (including biographies, memoirs, essays, and journalism), short-form works (including short stories and articles), textbooks, academic or educational works, reference works, poetry, drama, and instructional or technical works.

2. All Documents and Communications Concerning any testing, evaluation, benchmark, study, analysis, report, or comparison of the abilities or capabilities identified in Request No. 1, including assessments of output length, quality, coherence, creativity, factual accuracy, genre or style fidelity, similarity to existing works or authors, and the extent to which model-generated output may substitute for or compete with human-authored works.

3. All Documents and Communications Concerning Your licensing and efforts to license books and other content for AI training.

4. Documents and Communications sufficient to identify each torrenting application, torrent software version, implementation, library, and/or Torrent Client You used to obtain Data from Online Databases from January 1, 2019 to the present.

5. All Documents and Communications, including configuration files, settings registries, and similar records, Concerning Your efforts to prevent, limit, or mitigate uploading, re-uploading, seeding, peer exchange, leeching, or otherwise making Data available to other users during or after the Torrenting process, including by altering configurations and settings of Torrent Clients, devices, servers, virtual machines, networks, cloud environments, or storage systems.

## CERTIFICATE OF SERVICE

**COURT:** United States District Court, Northern District of California

**CASE NAME:** *Cambronne, Inc., et al. v. Meta Platforms, Inc.*

**CASE NUMBER: 3:26-cv-03725-VC**

I, the undersigned, am employed by Freedman Normand Friedland LLP. My business address is 155 E. 44th St., Suite 915 New York, NY 10017. I am over the age of eighteen and not a party to this action.

On August 17, 2026, I caused the following documents to be served by email upon the parties listed on the attached Service List:

- **PLAINTIFFS' NOTICE OF SUBPOENA AND SUBPOENA TO ANTHROPIC PBC**

I declare under penalty of perjury that the foregoing is true and correct.

Executed: August 17, 2026

**FREEDMAN NORMAND FRIEDLAND LLP**

*/s/ Kyle Roche*
Kyle Roche

## SERVICE LIST

**DUNN ISAACSON RHEE LLP**
Karen L. Dunn (pro hac vice)
Jessica E. Phillips (pro hac vice)
Kyle N. Smith (pro hac vice)
401 9th Street NW Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

**COOLEY LLP**
Bobby A. Ghajar (198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Mark R. Weinstein (193043)
Elizabeth Lee Stameshkin (260865)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: mweinstein@cooley.com
lstameshkin@cooley.com

Kathleen R. Hartnett (314267)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com

Phillip E. Morton (pro hac vice)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 728-7055
pmorton@cooley.com

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Angela L. Dunning (212047)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*

**WHITE & CASE LLP**
YAR R. CHAIKOVSKY (CA 175421)
yar.chaikovsky@whitecase.com
ANDY LEGOLVAN (CA 292520)
andy.legolvan@whitecase.com
AMIR JABBARI (CA 339097)
amir.jabbari@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Attorneys for
Non-Party Anthropic PBC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMBRONNE, INC., ET AL.,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:26-cv-03725-VC<br><br>**NON-PARTY ANTHROPIC PBC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' SUBPOENA DUCES TECUM** |

Non-Party Anthropic PBC ("Anthropic") provides the following objections and responses to the Subpoena Duces Tecum issued by Plaintiffs in *Cambronne, Inc. et al. v. Meta Platforms, Inc.,* Case No. 3:26-cv-03725-CV (N.D. Cal. 2026). Anthropic was served with the subpoena on August 17, 2026.

**GENERAL OBJECTIONS**

1. Anthropic is a non-party. Anthropic objects to the Subpoena to the extent it seeks documents concerning Anthropic's own models, data-acquisition practices, and licensing, none of which is relevant to the claims against Meta in this action or proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); 45(d).

2. Anthropic objects to the Instructions to the extent they impose obligations beyond Rule 45. Anthropic's responses shall not be construed as agreeing expressly or impliedly to follow those Instructions.

3. Anthropic objects to the terms "You" and "Your" as overbroad and vague to the extent defined to include entities owned in whole or in part by Anthropic PBC. Anthropic responds only for Anthropic PBC.

4. Anthropic objects to the definitions of "Online Databases," "Data," "Concerning," and "Relevant Period" as overbroad, vague, argumentative, and assuming disputed facts.

5. Anthropic objects to the extent the Subpoena seeks privileged, work-product, trade-secret, or confidential commercial information. Fed. R. Civ. P. 45(d)(3)(B)(i). Anthropic does not consent to the designated place of compliance and reserves all rights regarding the proper place of compliance and forum. Anthropic serves these responses without waiving any objection and expressly reserves its right to move to quash or modify the Subpoena and for a protective order.

6. Anthropic objects to each request to the extent it seeks information that is not in Anthropic's possession, custody, or control.

7. The General Objections set forth above are made as to the matters that are clearly objectionable from the face of the requests. These objections are made without prejudice to and without waiver of Anthropic's right to object on all appropriate grounds to the specific information

sought by each request. Anthropic's response to any request is not a waiver of its objections or its right to object to any additional, supplemental, or further request, or any part thereof.

**SPECIFIC OBJECTIONS AND RESPONSES**

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications Concerning the ability or capability of any of Your artificial-intelligence models, including any version of Claude, to generate, continue, summarize, transform, imitate, or reproduce literary content of different types or forms, including fiction (including novels and genre fiction), nonfiction (including biographies, memoirs, essays, and journalism), short-form works (including short stories and articles), textbooks, academic or educational works, reference works, poetry, drama, and instructional or technical works.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Anthropic incorporates by reference the General Objections above.

Anthropic objects to this Request as seeking documents that are not relevant to any claim or defense in this action, which concerns Meta's Llama models and Meta's conduct. See Am. Compl. ¶¶ 2, 87-88. The capabilities of Anthropic's Claude models have no bearing on whether Meta infringed Plaintiffs' Works. Under Rule 26(b)(1) and Rule 45(d)(1), the Request is neither relevant to the parties' dispute nor proportional to the needs of a case to which Anthropic is not a party.

Anthropic further objects to this Request as overbroad, vague, and ambiguous. The Request seeks "All Documents and Communications Concerning the ability or capability" of "any" of Anthropic's models, across an open-ended list of functions ("generate, continue, summarize, transform, imitate, or reproduce") and content types, with no limitation as to time. Read against the Subpoena's expansive definition of "Concerning," the Request would reach substantially every internal document that touches on model capability. Anthropic further objects to the terms "ability or capability," "literary content," and "imitate" as vague and ambiguous.

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. Anthropic is not accused of wrongdoing in this action, and no claim against Meta turns on Anthropic's conduct. The Request would require Anthropic to search for and review documents touching virtually every aspect of its models' capabilities—a burden

disproportionate to any bearing those documents could have on Plaintiffs' claims against Meta.

Anthropic further objects that the Request seeks Anthropic's trade-secret and confidential commercial information, including the design and performance of its proprietary models. Fed. R. Civ. P. 45(d)(3)(B)(i). Anthropic further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

In view of the foregoing objections, Anthropic will not be producing documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Communications Concerning any testing, evaluation, benchmark, study, analysis, report, or comparison of the abilities or capabilities identified in Request No. 1, including assessments of output length, quality, coherence, creativity, factual accuracy, genre or style fidelity, similarity to existing works or authors, and the extent to which model-generated output may substitute for or compete with human-authored works.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Anthropic incorporates by reference its General Objections.

Anthropic objects to this Request as seeking documents that are not relevant to any claim or defense in this action, which concerns Meta's Llama models and Meta's conduct. See Am. Compl. ¶¶ 87–88. Anthropic's own testing and benchmarking of its models says nothing about Meta's alleged infringement.

Anthropic further objects to this Request as overbroad, vague, and ambiguous. The Request seeks "All Documents and Communications Concerning any testing, evaluation, benchmark, study, analysis, report, or comparison" of an open-ended list of qualities—output length, quality, coherence, creativity, factual accuracy, genre or style fidelity, similarity to existing works or authors, and market substitution—with no limitation as to time. So framed, the Request does not permit Anthropic to identify with reasonable particularity the documents sought.

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. Anthropic is not a defendant, and its internal evaluation of its own

models has no bearing on Meta's liability. Responding would require Anthropic to search for and review documents covering virtually every aspect of its testing, benchmarking, and evaluation practices—a burden disproportionate to Anthropic's status as a non-party to this dispute.

Anthropic further objects to this Request because it seeks disclosure of an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from study that was not requested by a party. Fed. R. Civ. P. 45(d)(3)(B)(ii). The Request expressly seeks Anthropic's internal "testing, evaluation, benchmark[s], stud[ies], analys[es], report[s], or comparison[s]" of model output, including assessments of "similarity to existing works or authors" and "the extent to which model-generated output may substitute for or compete with human-authored works." Those materials reflect Anthropic's own technical and analytical judgments about generative-AI models generally, not facts concerning Meta's conduct or Plaintiffs' Works.

Anthropic further objects that the Request seeks its trade-secret and confidential commercial information. Anthropic's evaluations and benchmarks of model performance are among its most competitively sensitive materials. Fed. R. Civ. P. 45(d)(3)(B)(i). Anthropic further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

In view of the foregoing objections, Anthropic will not be producing documents responsive to this Request.

**<u>REQUEST FOR PRODUCTION NO. 3</u>:**

All Documents and Communications Concerning Your licensing and efforts to license books and other content for AI training.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 3</u>:**

Anthropic incorporates by reference the General Objections above.

Anthropic objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks trade secret or confidential commercial information of Anthropic and other non-parties, including the terms of business relationships between Anthropic and such other non-parties. Plaintiffs do not have a substantial need for the requested materials that cannot otherwise be met without undue hardship, including from Meta directly.

Anthropic further objects to this Request as overbroad, vague, and ambiguous to the extent it seeks "all Documents and Communications Concerning" Anthropic's "licensing and efforts to license," and to the extent it seeks documents concerning "books and other content for AI training." Anthropic further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

Anthropic further objects to this Request to the extent Plaintiffs contend that Anthropic's licensing agreements or licensing efforts are relevant to the fourth fair-use factor. Whether a market exists for licensing copyrighted works for use in training a non-party's models says nothing about the effect of Meta's alleged use on the market for Plaintiffs' Works. And, as this Court has held, harm from the loss of fees to license a work for a transformative purpose is not cognizable under the fourth factor, precisely because treating it as such would render the analysis circular and favor the rightsholder in every case. *See Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1052 (N.D. Cal. 2025).

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. Anthropic's licensing strategy and negotiations are not relevant to whether Meta infringed Plaintiffs' Works. The Request would require Anthropic to search for and review documents concerning virtually every aspect of its licensing efforts and business relationships with third parties, a burden that outweighs any relevance to Meta's conduct.

Subject to and without waiving its objections, and subject to and pursuant to a protective order entered in this action (or a substantially equivalent protective order permitting a Highly Confidential, Attorneys' Eyes Only designation), Anthropic is willing to produce executed licensing agreements and content-access agreements related to the categories of (a) books and magazines and (b) news and journalism, in each case where the content was used for training of commercially available and generally accessible models, executed from January 1, 2022 to the present. For the avoidance of doubt, agreements for purchases of physical books or media are not deemed responsive.

Anthropic will not produce documents and communications concerning its licensing efforts, negotiations, and strategy, or agreements outside the categories and use described above.

**<u>REQUEST FOR PRODUCTION NO. 4</u>:**

Documents and Communications sufficient to identify each torrenting application, torrent software version, implementation, library, and/or Torrent Client You used to obtain Data from Online Databases from January 1, 2019 to the present.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 4</u>:**

Anthropic incorporates by reference the General Objections above.

The Request is incoherent as applied to Anthropic. The Subpoena defines "Torrent Client" as software "used by Meta" to obtain data from Online Databases. Anthropic does not know the software that Meta used and in any case, any information about Meta's use of any torrenting clients would be exclusively within Meta's possession, if it exists at all.

To the extent the Request instead seeks Anthropic's own data-acquisition tools, that information concerns Anthropic's conduct, not Meta's, and is not relevant to any claim or defense in this action. See Am. Compl. ¶¶ 6-7, 57, 71, 76. Anthropic's acquisition methods are not relevant to Meta's liability.

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. Anthropic's own data-acquisition tools say nothing about how Meta obtained data, and Anthropic is not accused of any wrongdoing in this action. Complying would require Anthropic to search for and review documents covering virtually every aspect of its data-acquisition infrastructure over a seven-year period, a burden disproportionate to any relevance those documents could have to Meta's conduct.

Anthropic further objects that the Request seeks its confidential and competitively sensitive data-acquisition infrastructure. Fed. R. Civ. P. 45(d)(3)(B)(i). The Request is also overbroad as to "each torrenting application, torrent software version, implementation, library, and/or Torrent Client" across the period January 1, 2019 to the present. Anthropic further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

In view of the foregoing objections, Anthropic will not be producing documents responsive to this Request.

**<u>REQUEST FOR PRODUCTION NO. 5</u>:**

All Documents and Communications, including configuration files, settings registries, and similar records, Concerning Your efforts to prevent, limit, or mitigate uploading, re-uploading, seeding, peer exchange, leeching, or otherwise making Data available to other users during or after the Torrenting process, including by altering configurations and settings of Torrent Clients, devices, servers, virtual machines, networks, cloud environments, or storage systems.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 5</u>:**

Anthropic incorporates by reference the General Objections above.

Anthropic objects to this Request as seeking its own technical practices and configurations (its efforts to prevent seeding, leeching, and re-uploading), which bear on Anthropic's conduct, not Meta's. The Complaint's contributory-infringement theory concerns Meta's alleged seeding and leeching. See Am. Compl. ¶¶ 7, 71-73, 99-101. Anthropic's configurations are not relevant to anything Meta has done.

Anthropic further objects to this Request as overbroad and vague to the extent it seeks "All Documents and Communications, including configuration files, settings registries, and similar records, Concerning Your efforts to prevent, limit, or mitigate" an open-ended list of activities across "Torrent Clients, devices, servers, virtual machines, networks, cloud environments, or storage systems," with no limitation as to time.

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. The Complaint's contributory-infringement theory concerns Meta's alleged seeding and leeching, not Anthropic's. Responding would require Anthropic to search for and review documents covering virtually every aspect of its network, device, and storage configurations, a burden that has no connection to any claim against Meta.

Anthropic further objects that the Request seeks its confidential and trade-secret technical information, including its network and storage architecture. Fed. R. Civ. P. 45(d)(3)(B)(i). Anthropic further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

In view of the foregoing objections, Anthropic will not be producing documents responsive to

this Request.

**REQUEST FOR PRODUCTION NO. 6:**

Documents sufficient to authenticate each Document produced or to be produced by You in response to this Subpoena or to identify the person or persons with knowledge necessary to authenticate each such Document.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Anthropic incorporates by reference its General Objections above.

This Request is derivative of Requests Nos. 1-5 and incorporates its objections to each of those Requests. Anthropic further objects to the phrase "sufficient to authenticate" as vague and ambiguous. The Request does not identify any category of existing documents that would "authenticate" another document, and Anthropic does not maintain authentication documents in the ordinary course of business.

In view of the foregoing General and Specific Objections, Anthropic will not be producing documents responsive to this Request. Anthropic is willing, however, to meet and confer regarding authentication of any documents Anthropic produces in response to this Subpoena, in a manner that does not impose unnecessary burden on a non-party, for example, by a custodian-of-records declaration under Federal Rule of Evidence 902(11) in lieu of a deposition.

Dated: August 21, 2026

WHITE & CASE LLP

By: *__/s/ Yar Chaikovsky*
Yar R. Chaikovsky
Andy LeGolvan
Amir Jabbari

Attorneys for Non-Party
Anthropic PBC

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served via email to counsel of record for **CAMBRONNE, INC., ET AL.** in accordance with the Federal Rules

of Civil Procedure on August 21, 2026.

*/s/ Yar R. Chaikovsky*
Yar R. Chaikovsky

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| Cognella, Inc. *Plaintiff* v. Meta Platforms, Inc. *Defendant* | ) ) ) ) ) ) | Civil Action No. 3:26-cv-04053 |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Anthropic PBC

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A

| Place: San Francisco, CA | Date and Time: 08/28/2026 9:00 am |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/17/2026

*CLERK OF COURT*

OR

/s/ Kyle W. Roche

*Signature of Clerk or Deputy Clerk* | *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff Kyle W. Roche, 155 E 44th Street, Suite 915 New York, NY 10017, who issues or requests this subpoena, are: kroche@fnf.law, 646-494-2900

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 3:26-cv-04053

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ______________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________________
______________________________________________ on *(date)* ______________ ; or

❒ I returned the subpoena unexecuted because: ______________________
______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ______________ .

My fees are $ ______________ for travel and $ ______________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the following is a list of requests ("Requests") sought from the recipient of this Subpoena. These Requests seek information to support Plaintiff's claims as alleged in Plaintiff's Complaint in *Cognella, Inc. v. Meta Platforms, Inc.*, Case No. 3:26-cv-04053-VC (N.D. Cal. 2026).

**DEFINITIONS**

1. As used herein, the following words, terms, and phrases—whether singular or plural, or in an alternate verb tense—shall have the meanings ascribed below. Defined terms may not be capitalized or made uppercase. The given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

2. "All," "Or," and "And" should be understood to include and encompass "any"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

3. "BitTorrent" means the peer-to-peer file sharing protocol of the same name, as originally specified in https://bittorrent.org/beps/bep_0003.html, and implemented by software such as LibTorrent.

4. "Communications" means oral or written communications of any kind, communicated directly or indirectly, including, without limitation inquiries, complaints, discussions, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondences, memoranda, notes, telegrams, facsimiles, electronic mail (e-mail) messages and attachments, instant or direct messages (including SMS messages, text messages, Apple iMessages, Slack messages, Teams messages), memoranda, documents, writings, or other forms of communications. The term "Communications" includes instances where one party disseminates information that the other party receives but does not respond to.

5. "Complaint" refers to the operative complaint at the time documents are produced in response to these requests. At the time of service, the currently operative Complaint is Plaintiff's Complaint. ECF No. 1.

6. "Concerning," whether capitalized or not, refers to and includes "constituting," "evidencing," "supporting," "regarding," "mentioning," "reflecting," "concerning," "relating to," "referring to," "pertaining to," "alluding to," "responding to," "proving," "discussing," "assessing," "disproving," "connected with," "commenting on," "about," "showing," "describing," and/or logically or factually dealing with the matter described in the request in which the term appears.

7. "Data" means content, files, information, metadata, software, or any other digital material including Documents, including copies and backups of any of the foregoing digital material, whether in custodial or non-custodial sources.

8. "Document" is used in its broadest sense allowed by Rule 34(a) of the Federal Rules of Civil Procedure and includes, but is not limited to, any writings, drawings, graphs, handwriting, typewriting, printing, photostatting, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.

This includes:

- The originals, drafts and All non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise;
- Booklets, brochures, pamphlets, circulars, notices, periodicals, papers, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, financial calculations and representations, invoices, accounting and diary entries, inventory sheets, diaries, appointment books or calendars, teletypes, telefaxes, thermafaxes, ledgers, trial balances, correspondence, telegrams, press releases, advertisements, notes, working papers, drawings, schedules, tabulations, projections, information or programs stored in a computer (whether or not ever printed out or displayed), and All drafts, alterations, modifications, changes or amendments of any of the foregoing;

- Graphic or aural representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotapes, recordings, drawing, charts and motion pictures;
- All letters, words, pictures, sounds, or symbols, or combinations thereof stored in or on any electronic, mechanical, magnetic, or optical device including, but not limited to: (i) computer data storage devices (servers, laptops hard-drives, flash drives, discs, magnetic cards, and the like), (ii) the internet or "the Cloud" (such as e-mail, web posts, social media posts, internet pages, etc.), and (iii) information stored on cell phones.

9. "Including" and "Includes," whether capitalized or not, are used to provide examples of certain types of information and should not be construed as limiting a request or definition in any way. The terms "including" and "includes" shall be construed as if followed by the phrase "but not limited to."

10. "Online Database(s)" means the type of databases described in the Complaint—online databases with copyrighted material or books including but not limited to Books3, b3g, Z-Library (aka B-ok), Library Genesis (aka LibGen), Bibliotik, Anna's Archive, Internet Archive, DuXiu, The Pile, and WeLib. The term encompasses all versions, updates, augmentations, or modifications of such databases, and the distribution, provision, or sharing of copyrighted material or books by other users, or peers, via the torrent protocol or network.

11. "Relevant Period" includes and encompasses all times relevant to the acts and failures to act which are relevant to the Complaint.

12. "Torrent," "Torrented," and "Torrenting" mean peer-to-peer file sharing, including the use of Torrent Client(s), in which users download and/or upload pieces of digital files from and/or to multiple different users (peers) in a network simultaneously.

13. "Torrent Client(s)" means a network or application, including but not limited to implementations of the BitTorrent protocol, designed for sharing digital data and that was used by Meta to obtain data from any Online Database.

14. "Torrented Data" means Data acquired via Torrenting of Online Databases.

15. "You" or "Your" refers to Anthropic PBC, or entities, agents, or individuals under the employ of or otherwise controlled by Anthropic PBC, or entities owned in whole or in part by Anthropic PBC.

**INSTRUCTIONS**

1. Please separately respond to each item by stating (a) you will produce, (b) you are presently unable to produce, or (c) you object to production.

2. These Requests for Productions should be deemed continuing such that if You subsequently discover or obtain possession, custody, or control of any document or ESI previously requested or required to be produced, and supplemental productions should be provided as additional documents become available.

3. If You claim You are unable to produce a Document, you must state whether that inability is because the Document never existed; has been destroyed, lost, misplaced or stolen; or has never been or is no longer in your possession, custody or control. Such a statement must further set forth the name and address of any person or entity that you know or believe to have possession, custody or control of that item or category of item. If any Document responsive to a request has been destroyed, produce all documents describing or referencing: (1) the contents of the lost or destroyed document; (2) all locations in which any copy of the lost or destroyed Document had been maintained; (3) the date of any such loss or destruction to the extent known; (4) the name of each person who ordered, authorized and carried out the destruction of any lost or destroyed Document; (5) all document retention and destruction policies in effect at the time any requested Document was destroyed; and (6) all efforts made to locate any responsive Document alleged to have been lost or destroyed.

4. If You object to any item or category of item, Your response shall (a) identify with particularity each document or thing to which the objection is made and (b) set forth clearly the extent of, and specific ground for, the objection; and You should respond to the Request to the extent it is not objectionable.

5. If You object that a Document is covered by the attorney-client or other privilege, or is work-product, You shall provide a Privilege Log containing: (1) the name of the Document; (2)

the name and address of the person(s) who prepared it; (3) the person(s) to whom it was directed or circulated; (4) the date on which the Document was prepared or transmitted; (5) the name and address of the person(s) now in possession of the Document; (6) the description of the subject matter of the Document; and (7) the specific nature of the privilege claimed, including the reasons and each and every fact supporting the withholding, and legal basis sufficient to determine whether the claim of privilege is valid with respect to the Document (without revealing privileged information).

**REQUESTS FOR PRODUCTION**

1. All Documents and Communications Concerning the ability or capability of any of Your artificial-intelligence models, including any version of Claude, to generate, continue, summarize, transform, imitate, or reproduce literary content of different types or forms, including fiction (including novels and genre fiction), nonfiction (including biographies, memoirs, essays, and journalism), short-form works (including short stories and articles), textbooks, academic or educational works, reference works, poetry, drama, and instructional or technical works.

2. All Documents and Communications Concerning any testing, evaluation, benchmark, study, analysis, report, or comparison of the abilities or capabilities identified in Request No. 1, including assessments of output length, quality, coherence, creativity, factual accuracy, genre or style fidelity, similarity to existing works or authors, and the extent to which model-generated output may substitute for or compete with human-authored works.

3. All Documents and Communications Concerning Your licensing and efforts to license books and other content for AI training.

4. Documents and Communications sufficient to identify each torrenting application, torrent software version, implementation, library, and/or Torrent Client You used to obtain Data from Online Databases from January 1, 2019 to the present.

5. All Documents and Communications, including configuration files, settings registries, and similar records, Concerning Your efforts to prevent, limit, or mitigate uploading, re-uploading, seeding, peer exchange, leeching, or otherwise making Data available to other users during or after the Torrenting process, including by altering configurations and settings of Torrent Clients, devices, servers, virtual machines, networks, cloud environments, or storage systems.

# CERTIFICATE OF SERVICE

**COURT:** United States District Court, Northern District of California

**CASE NAME:** *Cognella, Inc. v. Meta Platforms, Inc.*

**CASE NUMBER: 3:26-cv-04053-VC**

I, the undersigned, am employed by Freedman Normand Friedland LLP. My business address is 155 E. 44th St., Suite 915 New York, NY 10017. I am over the age of eighteen and not a party to this action.

On August 17, 2026, I caused the following documents to be served by email upon the parties listed on the attached Service List:

- **PLAINTIFF'S NOTICE OF SUBPOENA AND SUBPOENA TO ANTHROPIC**

I declare under penalty of perjury that the foregoing is true and correct.

Executed: August 17, 2026

**FREEDMAN NORMAND FRIEDLAND LLP**

*/s/ Kyle Roche*
Kyle Roche

## SERVICE LIST

**DUNN ISAACSON RHEE LLP**
Karen L. Dunn (pro hac vice)
Jessica E. Phillips (pro hac vice)
Kyle N. Smith (pro hac vice)
401 9th Street NW Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

**COOLEY LLP**
Bobby A. Ghajar (198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Mark R. Weinstein (193043)
Elizabeth Lee Stameshkin (260865)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: mweinstein@cooley.com
lstameshkin@cooley.com

Kathleen R. Hartnett (314267)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com

Phillip E. Morton (pro hac vice)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 728-7055
pmorton@cooley.com

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Angela L. Dunning (212047)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*

**WHITE & CASE LLP**
YAR R. CHAIKOVSKY (CA 175421)
yar.chaikovsky@whitecase.com
ANDY LEGOLVAN (CA 292520)
andy.legolvan@whitecase.com
AMIR JABBARI (CA 339097)
amir.jabbari@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Attorneys for
Non-Party Anthropic PBC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COGNELLA, INC.,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 3:26-cv-04053-VC

**NON-PARTY ANTHROPIC PBC'S RESPONSES AND OBJECTIONS TO PLAINTIFF COGNELLA, INC.'S SUBPOENA DUCES TECUM**

Non-Party Anthropic PBC ("Anthropic") provides the following objections and responses to the Subpoena Duces Tecum issued by Plaintiff Cognella, Inc. ("Cognella"). Anthropic was served with the subpoena on August 17, 2026.

**GENERAL OBJECTIONS**

1. Anthropic is a non-party. Anthropic objects to the Subpoena to the extent it seeks documents concerning Anthropic's own models, data-acquisition practices, and licensing, none of which is relevant to the claims against Meta in this action or proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); 45(d).

2. Anthropic objects to the Instructions to the extent they impose obligations beyond Rule 45. Anthropic's responses shall not be construed as agreeing expressly or impliedly to follow those Instructions.

3. Anthropic objects to the terms "You" and "Your" as overbroad and vague to the extent defined to include entities owned in whole or in part by Anthropic PBC. Anthropic responds only for Anthropic PBC.

4. Anthropic objects to the definitions of "Online Databases," "Data," "Concerning," and "Relevant Period" as overbroad, vague, argumentative, and assuming disputed facts.

5. Anthropic objects to the extent the Subpoena seeks privileged, work-product, trade-secret, or confidential commercial information. Fed. R. Civ. P. 45(d)(3)(B)(i). Anthropic does not consent to the designated place of compliance and reserves all rights regarding the proper place of compliance and forum. Anthropic serves these responses without waiving any objection and expressly reserves its right to move to quash or modify the Subpoena and for a protective order.

6. Anthropic objects to each request to the extent it seeks information that is not in Anthropic's possession, custody, or control.

7. The General Objections set forth above are made as to the matters that are clearly objectionable from the face of the requests. These objections are made without prejudice to and without waiver of Anthropic's right to object on all appropriate grounds to the specific information sought by each request. Anthropic's response to any request is not a waiver of its objections or its right to object to any additional, supplemental, or further request, or any part thereof.

**SPECIFIC OBJECTIONS AND RESPONSES**

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications Concerning the ability or capability of any of Your artificial-intelligence models, including any version of Claude, to generate, continue, summarize, transform, imitate, or reproduce literary content of different types or forms, including fiction (including novels and genre fiction), nonfiction (including biographies, memoirs, essays, and journalism), short-form works (including short stories and articles), textbooks, academic or educational works, reference works, poetry, drama, and instructional or technical works.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Anthropic incorporates by reference the General Objections above.

Anthropic objects to this Request as seeking documents that are not relevant to any claim or defense in this action, which concerns Meta's Llama models and Meta's conduct. See Am. Compl. ¶¶ 2, 87-88. The capabilities of Anthropic's Claude models have no bearing on whether Meta infringed Cognella's Works. Under Rule 26(b)(1) and Rule 45(d)(1), the Request is neither relevant to the parties' dispute nor proportional to the needs of a case to which Anthropic is not a party.

Anthropic further objects to this Request as overbroad, vague, and ambiguous. The Request seeks "All Documents and Communications Concerning the ability or capability" of "any" of Anthropic's models, across an open-ended list of functions ("generate, continue, summarize, transform, imitate, or reproduce") and content types, with no limitation as to time. Read against the Subpoena's expansive definition of "Concerning," the Request would reach substantially every internal document that touches on model capability. Anthropic further objects to the terms "ability or capability," "literary content," and "imitate" as vague and ambiguous.

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. Anthropic is not accused of wrongdoing in this action, and no claim against Meta turns on Anthropic's conduct. The Request would require Anthropic to search for and review documents touching virtually every aspect of its models' capabilities—a burden disproportionate to any bearing those documents could have on Cognella's claims against Meta.

Anthropic further objects that the Request seeks Anthropic's trade-secret and confidential

commercial information, including the design and performance of its proprietary models. Fed. R. Civ. P. 45(d)(3)(B)(i). Anthropic further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

In view of the foregoing objections, Anthropic will not be producing documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Communications Concerning any testing, evaluation, benchmark, study, analysis, report, or comparison of the abilities or capabilities identified in Request No. 1, including assessments of output length, quality, coherence, creativity, factual accuracy, genre or style fidelity, similarity to existing works or authors, and the extent to which model-generated output may substitute for or compete with human-authored works.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Anthropic incorporates by reference its General Objections.

Anthropic objects to this Request as seeking documents that are not relevant to any claim or defense in this action, which concerns Meta's Llama models and Meta's conduct. See Am. Compl. ¶¶ 87–88. Anthropic's own testing and benchmarking of its models says nothing about Meta's alleged infringement.

Anthropic further objects to this Request as overbroad, vague, and ambiguous. The Request seeks "All Documents and Communications Concerning any testing, evaluation, benchmark, study, analysis, report, or comparison" of an open-ended list of qualities—output length, quality, coherence, creativity, factual accuracy, genre or style fidelity, similarity to existing works or authors, and market substitution—with no limitation as to time. So framed, the Request does not permit Anthropic to identify with reasonable particularity the documents sought.

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. Anthropic is not a defendant, and its internal evaluation of its own models has no bearing on Meta's liability. Responding would require Anthropic to search for and review documents covering virtually every aspect of its testing, benchmarking, and evaluation

practices—a burden disproportionate to Anthropic's status as a non-party to this dispute.

Anthropic further objects to this Request because it seeks disclosure of an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from study that was not requested by a party. Fed. R. Civ. P. 45(d)(3)(B)(ii). The Request expressly seeks Anthropic's internal "testing, evaluation, benchmark[s], stud[ies], analys[es], report[s], or comparison[s]" of model output, including assessments of "similarity to existing works or authors" and "the extent to which model-generated output may substitute for or compete with human-authored works." Those materials reflect Anthropic's own technical and analytical judgments about generative-AI models generally, not facts concerning Meta's conduct or Cognella's Works.

Anthropic further objects that the Request seeks its trade-secret and confidential commercial information. Anthropic's evaluations and benchmarks of model performance are among its most competitively sensitive materials. Fed. R. Civ. P. 45(d)(3)(B)(i). Anthropic further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

In view of the foregoing objections, Anthropic will not be producing documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents and Communications Concerning Your licensing and efforts to license books and other content for AI training.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Anthropic incorporates by reference the General Objections above.

Anthropic objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks trade secret or confidential commercial information of Anthropic and other non-parties, including the terms of business relationships between Anthropic and such other non-parties. Plaintiff does not have a substantial need for the requested materials that cannot otherwise be met without undue hardship, including from Meta directly.

Anthropic further objects to this Request as overbroad, vague, and ambiguous to the extent it seeks "all Documents and Communications Concerning" Anthropic's "licensing and efforts to

license," and to the extent it seeks documents concerning "books and other content for AI training." Anthropic further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

Anthropic further objects to this Request to the extent Cognella contends that Anthropic's licensing agreements or licensing efforts are relevant to the fourth fair-use factor. Whether a market exists for licensing copyrighted works for use in training a non-party's models says nothing about the effect of Meta's alleged use on the market for Cognella's Works. And, as this Court has held, harm from the loss of fees to license a work for a transformative purpose is not cognizable under the fourth factor, precisely because treating it as such would render the analysis circular and favor the rightsholder in every case. *See Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1052 (N.D. Cal. 2025).

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. Anthropic's licensing strategy and negotiations are not relevant to whether Meta infringed Cognella's Works. The Request would require Anthropic to search for and review documents concerning virtually every aspect of its licensing efforts and business relationships with third parties, a burden that outweighs any relevance to Meta's conduct.

Subject to and without waiving its objections, and subject to and pursuant to a protective order entered in this action (or a substantially equivalent protective order permitting a Highly Confidential, Attorneys' Eyes Only designation), Anthropic is willing to produce executed licensing agreements and content-access agreements related to the categories of (a) books and magazines and (b) news and journalism, in each case where the content was used for training of commercially available and generally accessible models, executed from January 1, 2022 to the present. For the avoidance of doubt, agreements for purchases of physical books or media are not deemed responsive.

Anthropic will not produce documents and communications concerning its licensing efforts, negotiations, and strategy, or agreements outside the categories and use described above.

**REQUEST FOR PRODUCTION NO. 4:**

Documents and Communications sufficient to identify each torrenting application, torrent

software version, implementation, library, and/or Torrent Client You used to obtain Data from Online Databases from January 1, 2019 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Anthropic incorporates by reference the General Objections above.

The Request is incoherent as applied to Anthropic. The Subpoena defines "Torrent Client" as software "used by Meta" to obtain data from Online Databases. Anthropic does not know the software that Meta used and in any case, any information about Meta's use of any torrenting clients would be exclusively within Meta's possession, if it exists at all.

To the extent the Request instead seeks Anthropic's own data-acquisition tools, that information concerns Anthropic's conduct, not Meta's, and is not relevant to any claim or defense in this action. See Am. Compl. ¶¶ 6-7, 57, 71, 76. Anthropic's acquisition methods are not relevant to Meta's liability.

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. Anthropic's own data-acquisition tools say nothing about how Meta obtained data, and Anthropic is not accused of any wrongdoing in this action. Complying would require Anthropic to search for and review documents covering virtually every aspect of its data-acquisition infrastructure over a seven-year period, a burden disproportionate to any relevance those documents could have to Meta's conduct.

Anthropic further objects that the Request seeks its confidential and competitively sensitive data-acquisition infrastructure. Fed. R. Civ. P. 45(d)(3)(B)(i). The Request is also overbroad as to "each torrenting application, torrent software version, implementation, library, and/or Torrent Client" across the period January 1, 2019 to the present. Anthropic further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

In view of the foregoing objections, Anthropic will not be producing documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications, including configuration files, settings registries, and

similar records, Concerning Your efforts to prevent, limit, or mitigate uploading, re-uploading, seeding, peer exchange, leeching, or otherwise making Data available to other users during or after the Torrenting process, including by altering configurations and settings of Torrent Clients, devices, servers, virtual machines, networks, cloud environments, or storage systems.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Anthropic incorporates by reference the General Objections above.

Anthropic objects to this Request as seeking its own technical practices and configurations (its efforts to prevent seeding, leeching, and re-uploading), which bear on Anthropic's conduct, not Meta's. The Complaint's contributory-infringement theory concerns Meta's alleged seeding and leeching. See Am. Compl. ¶¶ 7, 71-73, 99-101. Anthropic's configurations are not relevant to anything Meta has done.

Anthropic further objects to this Request as overbroad and vague to the extent it seeks "All Documents and Communications, including configuration files, settings registries, and similar records, Concerning Your efforts to prevent, limit, or mitigate" an open-ended list of activities across "Torrent Clients, devices, servers, virtual machines, networks, cloud environments, or storage systems," with no limitation as to time.

Anthropic further objects that this Request is unduly burdensome as applied to a non-party whose conduct is not at issue. The Complaint's contributory-infringement theory concerns Meta's alleged seeding and leeching, not Anthropic's. Responding would require Anthropic to search for and review documents covering virtually every aspect of its network, device, and storage configurations, a burden that has no connection to any claim against Meta.

Anthropic further objects that the Request seeks its confidential and trade-secret technical information, including its network and storage architecture. Fed. R. Civ. P. 45(d)(3)(B)(i). Anthropic further objects to the extent the Request seeks documents protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

In view of the foregoing objections, Anthropic will not be producing documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 6:**

Documents sufficient to authenticate each Document produced or to be produced by You in response to this Subpoena or to identify the person or persons with knowledge necessary to authenticate each such Document.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 6</u>:**

Anthropic incorporates by reference its General Objections above.

This Request is derivative of Requests Nos. 1-5 and incorporates its objections to each of those Requests. Anthropic further objects to the phrase "sufficient to authenticate" as vague and ambiguous. The Request does not identify any category of existing documents that would "authenticate" another document, and Anthropic does not maintain authentication documents in the ordinary course of business.

In view of the foregoing General and Specific Objections, Anthropic will not be producing documents responsive to this Request. Anthropic is willing, however, to meet and confer regarding authentication of any documents Anthropic produces in response to this Subpoena, in a manner that does not impose unnecessary burden on a non-party, for example, by a custodian-of-records declaration under Federal Rule of Evidence 902(11) in lieu of a deposition.

Dated: August 21, 2026

WHITE & CASE LLP

By: *<u>/s/ Yar Chaikovsky</u>*
Yar R. Chaikovsky
Andy LeGolvan
Amir Jabbari

Attorneys for Non-Party
Anthropic PBC

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served via email to counsel of record for **COGNELLA, INC.** in accordance with the Federal Rules of Civil Procedure on August 21, 2026.

*/s/ Yar R. Chaikovsky*
Yar R. Chaikovsky

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| CHICKEN SOUP FOR THE SOUL, LLC, *Plaintiff* v. META PLATFORMS, INC., *Defendant* | ) ) ) ) ) ) | Civil Action No. 3:26-cv-02333-VC |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: ANTHROPIC, PBC

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A

| Place: | Date and Time: |
|---|---|
| To be determined as mutually agreeable to the parties | August 14, 2026 at 9:00 a.m. |

The deposition will be recorded by this method: Stenographic and audiovisual means

❐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 07/24/2026

*CLERK OF COURT*

OR

/s/ Kyle Roche

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff , who issues or requests this subpoena, are:

Kyle W. Roche, 155 E. 44th Street, Suite 915, New York, New York 10017, kroche@fnf.law, (646) 494-290

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 3:26-cv-02333-VC

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named individual as follows: ______________

______________________________________________________________________

______________________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________

______________________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ________________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

Print Save As... Add Attachment Reset

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Elizabeth Brannen (SBN 226234)
ebrannen@stris.com
John Stokes (SBN 310847)
jstokes@stris.com
Lauren Martin (SBN 294367)
lmartin@stris.com
**STRIS & MAHER LLP**
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
T: (213) 995-6800
F: (213) 261-0299

Christopher M. Rigali *(pro hac vice)*
crigali@stris.com
Jacqueline Sahlberg (*pro hac vice*)
jsahlberg@stris.com
**STRIS & MAHER LLP**
1601 K Street NW Ste 1050
Washington, DC 20006
T: (202) 800-5749

Kyle Roche (*pro hac vice*)
kroche@fnf.law
Devin (Velvel) Freedman (*pro hac vice* forthcoming)
vel@fnf.law
Alex Potter (*pro hac vice*)
apotter@fnf.law
**FREEDMAN NORMAND FRIEDLAND LLP**
155 E. 44th Street, Ste 915
New York, NY 10017
T: (646) 494-2900

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CHICKEN SOUP FOR THE SOUL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:26-cv-02333-VC<br><br>**PLAINTIFF'S NOTICE OF DEPOSITION OF ANTHROPIC** |

PLEASE TAKE NOTICE that, pursuant to Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure, and the subpoena served or to be served upon Anthropic, Plaintiff Chicken Soup for the Soul, LLC, by and through its undersigned attorneys, will take the deposition upon oral examination of the person(s) designated by Anthropic to testify on its behalf regarding the matters for examination set forth in Schedule A attached hereto. The deposition will commence at 9:00 a.m. on August 14, 2026 before a Notary Public or other officer authorized to administer oaths, and will continue from day to day until completed. The deposition will take place at a place mutually agreed upon by the Parties. The deposition will be recorded by stenographic and audiovisual means and may also be recorded by instant visual display using real-time transcription software. You are invited to attend and cross-examine.

PLEASE TAKE FURTHER NOTICE that, as required by Federal Rule of Civil Procedure 30(b)(6), Anthropic must designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf regarding the matters for examination identified in Schedule A, and must designate each person who will testify. Anthropic is further advised of its duty to confer in good faith with Plaintiff about the matters for examination before or promptly after service of the subpoena. The persons designated must testify about information known or reasonably available to Anthropic.

Plaintiff reserves the right to seek relief from the Court in the event that any designated witness is not adequately prepared to testify on behalf of Anthropic with respect to each of the identified matters for examination.

DATED: July 24, 2026

**FREEDMAN NORMAND FRIEDLAND LLP**

*/s/ Kyle Roche*

Kyle Roche (*pro hac vice* )
Devin (Velvel) Freedman (*pro hac vice*)
Alex Potter (*pro hac vice*)
**FREEDMAN NORMAND FRIEDLAND LLP**
155 E. 44th Street, Suite 915
New York NY 10017
T: (646) 494-2900
vel@fnf.law
kroche@fnf.law
apotter@fnf.law

Elizabeth Brannen (SBN 226234)
John Stokes (SBN 310847)
Lauren Martin (SBN 294367)
**STRIS & MAHER LLP**
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
T: (213) 995-6800
F: (213) 261-0299
ebrannen@stris.com
jstokes@stris.com
lmartin@stris.com

Christopher M. Rigali (*pro hac vice*)
Jacqueline Sahlberg (*pro hac vice*)
1717 K St NW Suite 900
Washington, DC 20006
Phone: (202) 800-5749
crigali@stris.com
jsahlberg@stris.com

*Counsel for Plaintiff*

**SCHEDULE A**

Pursuant to Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure, the following are the matters for examination (the "Topics") on which Plaintiff will examine the representative(s) designated by Anthropic to testify on its behalf. These Topics seek testimony to support Plaintiff's claims as alleged in Plaintiff's Amended Complaint in Chicken Soup for the Soul, LLC v. Meta Platforms Inc., Case No. 3:26-cv-02333-VC (N.D. Cal. 2026).

**DEFINITIONS**

1. As used herein, the following words, terms, and phrases—whether singular or plural, or in an alternate verb tense—shall have the meanings ascribed below. Defined terms may not be capitalized or made uppercase. The given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

2. "All," "Or," and "And" should be understood to include and encompass "any"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

3. "BitTorrent" means the peer-to-peer file sharing protocol of the same name, as originally specified in https://bittorrent.org/beps/bep_0003.html, and implemented by software such as LibTorrent.

4. "Communications" means oral or written communications of any kind, communicated directly or indirectly, including, without limitation inquiries, complaints, discussions, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondences, memoranda, notes, telegrams, facsimiles, electronic mail (e-mail) messages and attachments, instant or direct messages (including SMS messages, text messages, Apple iMessages, Slack messages, Teams messages), memoranda, documents, writings, or other forms of communications. The term "Communications" includes instances where one party disseminates information that the other party receives but does not respond to.

5. "Complaint" refers to the operative complaint at the time of this deposition. At the time of service, the currently operative Complaint is Plaintiff's Amended Complaint. ECF No. 63.

6. “Concerning,” whether capitalized or not, refers to and includes “constituting,” “evidencing,” “supporting,” “regarding,” “mentioning,” “reflecting,” “concerning,” “relating to,” “referring to,” “pertaining to,” “alluding to,” “responding to,” “proving,” “discussing,” “assessing,” “disproving,” “connected with,” “commenting on,” “about,” “showing,” “describing,” and/or logically or factually dealing with the matter described in the request in which the term appears.

7. “Data” means content, files, information, metadata, software, or any other digital material including Documents, including copies and backups of any of the foregoing digital material, whether in custodial or non-custodial sources.

8. “Document” is used in its broadest sense allowed by Rule 34(a) of the Federal Rules of Civil Procedure and includes, but is not limited to, any writings, drawings, graphs, handwriting, typewriting, printing, photostatting, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.

This includes:

- The originals, drafts and All non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise;

- Booklets, brochures, pamphlets, circulars, notices, periodicals, papers, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, financial calculations and representations, invoices, accounting and diary entries, inventory sheets, diaries, appointment books or calendars, teletypes, telefaxes, thermafaxes, ledgers, trial balances, correspondence, telegrams, press releases, advertisements, notes, working papers, drawings, schedules, tabulations, projections, information or programs stored in a computer (whether or not ever printed out or displayed), and All drafts, alterations, modifications, changes or amendments of any of the foregoing;

- Graphic or aural representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotapes, recordings, drawing, charts and motion pictures;

- All letters, words, pictures, sounds, or symbols, or combinations thereof stored in or on any electronic, mechanical, magnetic, or optical device including, but not limited to: (i) computer data storage devices (servers, laptops hard-drives, flash drives, discs, magnetic cards, and the like), (ii) the internet or "the Cloud" (such as e-mail, web posts, social media posts, internet pages, etc.), and (iii) information stored on cell phones.

9. "Including" and "Includes," whether capitalized or not, are used to provide examples of certain types of information and should not be construed as limiting a request or definition in any way. The terms "including" and "includes" shall be construed as if followed by the phrase "but not limited to."

10. "Online Database(s)" means the type of databases described in the Complaint—online databases with copyrighted material or books including but not limited to Books3, b3g, Z-Library (aka B-ok), Library Genesis (aka LibGen), Bibliotik, Anna's Archive, Internet Archive, DuXiu, The Pile, and WeLib. The term encompasses all versions, updates, augmentations, or modifications of such databases, and the distribution, provision, or sharing of copyrighted material or books by other users, or peers, via the torrent protocol or network.

11. "Relevant Period" includes and encompasses all times relevant to the acts and failures to act which are relevant to the Complaint.

12. "Torrent," "Torrented," and "Torrenting" mean peer-to-peer file sharing, including the use of Torrent Client(s), in which users download and/or upload pieces of digital files from and/or to multiple different users (peers) in a network simultaneously.

13. "Torrent Client(s)" means a network or application, including but not limited to implementations of the BitTorrent protocol, designed for sharing digital data and that was used by Meta to obtain data from any Online Database.

14. "Torrented Data" means Data acquired via Torrenting of Online Databases.

15. "You" or "Your" refers to Anthropic PBC, or entities, agents, or individuals under the employ of or otherwise controlled by Anthropic PBC, or entities owned in whole or in part by Anthropic PBC.

**INSTRUCTIONS**

1. Anthropic must designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf as to each Topic set forth below, and must prepare each designee to provide complete and binding testimony as to information known or reasonably available to Anthropic concerning the designated Topic(s).

2. Before or promptly after service, the parties shall confer in good faith regarding these Topics. Plaintiff will meet and confer with Anthropic in an effort to reach agreement on the Topics, the identity and number of designees, and the date, time, and location (or remote means) of the deposition.

3. The designation of a witness for a given Topic constitutes a representation that the witness is prepared to provide testimony binding on Anthropic as to that Topic. If no witness with knowledge of a Topic is reasonably available, Anthropic shall so state and identify any person or entity it knows or believes to have such knowledge.

4. If Anthropic objects to any Topic, its objection shall (a) identify with particularity the portion of the Topic to which the objection is directed and (b) set forth clearly the extent of, and specific ground for, the objection; and Anthropic shall designate and prepare a witness to testify as to each Topic, or portion thereof, that is not objectionable.

5. To the extent Anthropic contends that any Topic calls for testimony protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection, it shall state the basis for withholding such testimony with sufficient specificity to permit Plaintiff and the Court to assess the claim, without revealing privileged information.

**MATTERS FOR EXAMINATION**

1. The ability or capability of any of Your artificial-intelligence models, including any version of Claude, to generate, continue, summarize, transform, imitate, or reproduce literary

content of different types or forms, including fiction (including novels and genre fiction), nonfiction (including biographies, memoirs, essays, and journalism), short-form works (including short stories and articles), textbooks, academic or educational works, reference works, poetry, drama, and instructional or technical works.

2. Any testing, evaluation, benchmark, study, analysis, report, or comparison of the abilities or capabilities identified in Request No. 1, including assessments of output length, quality, coherence, creativity, factual accuracy, genre or style fidelity, similarity to existing works or authors, and the extent to which model-generated output may substitute for or compete with human-authored works.

3. Your efforts to license books and other content for AI training.

4. The identity, versions, configuration, and settings of each Torrent Client You used to obtain Data from Online Databases from January 1, 2019 to the present.

5. Your efforts to prevent, limit, or mitigate uploading, re-uploading, seeding, peer exchange, or otherwise making Data available to other users during or after the Torrenting process.

**CERTIFICATE OF SERVICE**

**COURT:** United States District Court, Northern District of California

**CASE NAME:** *Chicken Soup for the Soul, LLC v. Meta Platforms, Inc.*

**CASE NUMBER: 3:26-cv-02333-VC**

I, the undersigned, am employed by Freedman Normand Friedland LLP. My business address is 155 E. 44th St., Suite 915 New York, NY 10017. I am over the age of eighteen and not a party to this action.

On July 24, 2026, I caused the following documents to be served by email upon the parties listed on the attached Service List:

- **PLAINTIFF'S NOTICE OF DEPOSITION OF ANTHROPIC**

I declare under penalty of perjury that the foregoing is true and correct.

Executed: July 24, 2026

**FREEDMAN NORMAND FRIEDLAND LLP**

*/s/ Kyle Roche*
Kyle Roche

# SERVICE LIST

**DUNN ISAACSON RHEE LLP**
Karen L. Dunn (pro hac vice)
Jessica E. Phillips (pro hac vice)
Kyle N. Smith (pro hac vice)
401 9th Street NW Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

**COOLEY LLP**
Bobby A. Ghajar (198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Mark R. Weinstein (193043)
Elizabeth Lee Stameshkin (260865)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: mweinstein@cooley.com
lstameshkin@cooley.com

Kathleen R. Hartnett (314267)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com

Phillip E. Morton (pro hac vice)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 728-7055
pmorton@cooley.com

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Angela L. Dunning (212047)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| Cambronne, Inc. et al. <br> *Plaintiff* <br> v. <br> Meta Platforms, Inc. <br> *Defendant* | ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 3:26-cv-03725-VC |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Anthropic PBC

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A

| Place: To be mutually agreed upon by the parties | Date and Time: 09/03/2026 9:00 am |
|---|---|

The deposition will be recorded by this method: Stenographic and audiovisual means

❐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/17/2026

*CLERK OF COURT*

OR

/s/ Kyle Roche

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff, who issues or requests this subpoena, are:

Kyle W. Roche, 155 E. 44th Street, Suite 915, New York, New York 10017, kroche@fnf.law, (646) 494-290

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 3:26-cv-03725-VC

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❐ I served the subpoena by delivering a copy to the named individual as follows: ____________
______________________________________________
______________________________ on *(date)* ____________ ; or

❐ I returned the subpoena unexecuted because: ______________________
______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

Pursuant to Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure, the following are the matters for examination (the "Topics") on which Plaintiffs will examine the representative(s) designated by Anthropic to testify on its behalf. These Topics seek testimony to support Plaintiffs' claims as alleged in Plaintiffs' Second Amended Complaint in Cambronne, Inc., et al. v. Meta Platforms, Inc., Case No. 3:26-cv-03725-VC (N.D. Cal. 2026).

## DEFINITIONS

1. As used herein, the following words, terms, and phrases—whether singular or plural, or in an alternate verb tense—shall have the meanings ascribed below. Defined terms may not be capitalized or made uppercase. The given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

2. "All," "Or," and "And" should be understood to include and encompass "any"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

3. "BitTorrent" means the peer-to-peer file sharing protocol of the same name, as originally specified in https://bittorrent.org/beps/bep_0003.html, and implemented by software such as LibTorrent.

4. "Communications" means oral or written communications of any kind, communicated directly or indirectly, including, without limitation inquiries, complaints, discussions, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondences, memoranda, notes, telegrams, facsimiles, electronic mail (e-mail) messages and attachments, instant or direct messages (including SMS messages, text messages, Apple iMessages, Slack messages, Teams messages), memoranda, documents, writings, or other forms of communications. The term "Communications" includes instances where one party disseminates information that the other party receives but does not respond to.

5. "Complaint" refers to the operative complaint at the time of this deposition. At the time of service, the currently operative Complaint is Plaintiffs' Second Amended Complaint. ECF No. 192.

6. "Concerning," whether capitalized or not, refers to and includes "constituting," "evidencing," "supporting," "regarding," "mentioning," "reflecting," "concerning," "relating to," "referring to," "pertaining to," "alluding to," "responding to," "proving," "discussing," "assessing," "disproving," "connected with," "commenting on," "about," "showing," "describing," and/or logically or factually dealing with the matter described in the request in which the term appears.

7. "Data" means content, files, information, metadata, software, or any other digital material including Documents, including copies and backups of any of the foregoing digital material, whether in custodial or non-custodial sources.

8. "Document" is used in its broadest sense allowed by Rule 34(a) of the Federal Rules of Civil Procedure and includes, but is not limited to, any writings, drawings, graphs, handwriting, typewriting, printing, photostatting, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.

This includes:

- The originals, drafts and All non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise;
- Booklets, brochures, pamphlets, circulars, notices, periodicals, papers, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, financial calculations and representations, invoices, accounting and diary entries, inventory sheets, diaries, appointment books or calendars, teletypes, telefaxes, thermafaxes, ledgers, trial balances, correspondence, telegrams, press releases, advertisements, notes, working papers, drawings, schedules, tabulations, projections, information or programs stored in a computer (whether or not ever

printed out or displayed), and All drafts, alterations, modifications, changes or amendments of any of the foregoing;

- Graphic or aural representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotapes, recordings, drawing, charts and motion pictures;
- All letters, words, pictures, sounds, or symbols, or combinations thereof stored in or on any electronic, mechanical, magnetic, or optical device including, but not limited to: (i) computer data storage devices (servers, laptops hard-drives, flash drives, discs, magnetic cards, and the like), (ii) the internet or "the Cloud" (such as e-mail, web posts, social media posts, internet pages, etc.), and (iii) information stored on cell phones.

9. "Including" and "Includes," whether capitalized or not, are used to provide examples of certain types of information and should not be construed as limiting a request or definition in any way. The terms "including" and "includes" shall be construed as if followed by the phrase "but not limited to."

10. "Online Database(s)" means the type of databases described in the Complaint—online databases with copyrighted material or books including but not limited to Books3, b3g, Z-Library (aka B-ok), Library Genesis (aka LibGen), Bibliotik, Anna's Archive, Internet Archive, DuXiu, The Pile, and WeLib. The term encompasses all versions, updates, augmentations, or modifications of such databases, and the distribution, provision, or sharing of copyrighted material or books by other users, or peers, via the torrent protocol or network.

11. "Relevant Period" includes and encompasses all times relevant to the acts and failures to act which are relevant to the Complaint.

12. "Torrent," "Torrented," and "Torrenting" mean peer-to-peer file sharing, including the use of Torrent Client(s), in which users download and/or upload pieces of digital files from and/or to multiple different users (peers) in a network simultaneously.

13. "Torrent Client(s)" means a network or application, including but not limited to implementations of the BitTorrent protocol, designed for sharing digital data and that was used by Meta to obtain data from any Online Database.

14. "Torrented Data" means Data acquired via Torrenting of Online Databases.

15. "You" or "Your" refers to Anthropic PBC, or entities, agents, or individuals under the employ of or otherwise controlled by Anthropic PBC, or entities owned in whole or in part by Anthropic PBC.

**INSTRUCTIONS**

1. Anthropic must designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf as to each Topic set forth below, and must prepare each designee to provide complete and binding testimony as to information known or reasonably available to Anthropic concerning the designated Topic(s).

2. Before or promptly after service, the parties shall confer in good faith regarding these Topics. Plaintiffs will meet and confer with Anthropic in an effort to reach agreement on the Topics, the identity and number of designees, and the date, time, and location (or remote means) of the deposition.

3. The designation of a witness for a given Topic constitutes a representation that the witness is prepared to provide testimony binding on Anthropic as to that Topic. If no witness with knowledge of a Topic is reasonably available, Anthropic shall so state and identify any person or entity it knows or believes to have such knowledge.

4. If Anthropic objects to any Topic, its objection shall (a) identify with particularity the portion of the Topic to which the objection is directed and (b) set forth clearly the extent of, and specific ground for, the objection; and Anthropic shall designate and prepare a witness to testify as to each Topic, or portion thereof, that is not objectionable.

5. To the extent Anthropic contends that any Topic calls for testimony protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection, it shall state the basis for withholding such testimony with sufficient specificity to permit Plaintiffs and the Court to assess the claim, without revealing privileged information.

**MATTERS FOR EXAMINATION**

1. The ability or capability of any of Your artificial-intelligence models, including any version of Claude, to generate, continue, summarize, transform, imitate, or reproduce literary content of different types or forms, including fiction (including novels and genre fiction), nonfiction (including biographies, memoirs, essays, and journalism), short-form works (including short stories and articles), textbooks, academic or educational works, reference works, poetry, drama, and instructional or technical works.

2. Any testing, evaluation, benchmark, study, analysis, report, or comparison of the abilities or capabilities identified in Request No. 1, including assessments of output length, quality, coherence, creativity, factual accuracy, genre or style fidelity, similarity to existing works or authors, and the extent to which model-generated output may substitute for or compete with human-authored works.

3. Your efforts to license books and other content for AI training.

4. The identity, versions, configuration, and settings of each Torrent Client You used to obtain Data from Online Databases from January 1, 2019 to the present.

5. Your efforts to prevent, limit, or mitigate uploading, re-uploading, seeding, peer exchange, or otherwise making Data available to other users during or after the Torrenting process.

**CERTIFICATE OF SERVICE**

**COURT:** United States District Court, Northern District of California

**CASE NAME:** *Cambronne, Inc., et al. v. Meta Platforms, Inc.*

**CASE NUMBER: 3:26-cv-03725-VC**

I, the undersigned, am employed by Freedman Normand Friedland LLP. My business address is 155 E. 44th St., Suite 915 New York, NY 10017. I am over the age of eighteen and not a party to this action.

On August 17, 2026, I caused the following documents to be served by email upon the parties listed on the attached Service List:

- **PLAINTIFFS' NOTICE OF DEPOSITION OF ANTHROPIC PBC**

I declare under penalty of perjury that the foregoing is true and correct.

Executed: August 17, 2026

**FREEDMAN NORMAND FRIEDLAND LLP**

*/s/ Kyle Roche*
Kyle Roche

**SERVICE LIST**

**DUNN ISAACSON RHEE LLP**
Karen L. Dunn (pro hac vice)
Jessica E. Phillips (pro hac vice)
Kyle N. Smith (pro hac vice)
401 9th Street NW Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

**COOLEY LLP**
Bobby A. Ghajar (198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Mark R. Weinstein (193043)
Elizabeth Lee Stameshkin (260865)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: mweinstein@cooley.com
lstameshkin@cooley.com

Kathleen R. Hartnett (314267)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com

Phillip E. Morton (pro hac vice)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 728-7055
pmorton@cooley.com

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Angela L. Dunning (212047)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| Cognella, Inc.<br>*Plaintiff*<br>v.<br>Meta Platforms, Inc.<br>*Defendant* | ) | Civil Action No. 3:26-cv-04053-VC |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To: Anthropic PBC

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A

| Place: To be mutually agreed upon by the parties | Date and Time: 09/03/2026 9:00 am |
|---|---|

The deposition will be recorded by this method: Stenographic and audiovisual means

❐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/17/2026

*CLERK OF COURT*

OR

/s/ Kyle Roche

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff, who issues or requests this subpoena, are:

Kyle W. Roche, 155 E. 44th Street, Suite 915, New York, New York 10017, kroche@fnf.law, (646) 494-290

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 3:26-cv-04053-VC

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ______________ .

❒ I served the subpoena by delivering a copy to the named individual as follows: ______________
__________________________________________________________________
__________________________________________ on *(date)* ______________ ; or

❒ I returned the subpoena unexecuted because: ______________________________
__________________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________________ .

My fees are $ ______________ for travel and $ ______________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

__________________________________
*Server's signature*

__________________________________
*Printed name and title*

__________________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

Pursuant to Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure, the following are the matters for examination (the "Topics") on which Plaintiff will examine the representative(s) designated by Anthropic to testify on its behalf. These Topics seek testimony to support Plaintiff's claims as alleged in Plaintiff's Complaint in Cognella, Inc. v. Meta Platforms, Inc., Case No. 3:26-cv-04053-VC (N.D. Cal. 2026).

## DEFINITIONS

1. As used herein, the following words, terms, and phrases—whether singular or plural, or in an alternate verb tense—shall have the meanings ascribed below. Defined terms may not be capitalized or made uppercase. The given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

2. "All," "Or," and "And" should be understood to include and encompass "any"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

3. "BitTorrent" means the peer-to-peer file sharing protocol of the same name, as originally specified in https://bittorrent.org/beps/bep_0003.html, and implemented by software such as LibTorrent.

4. "Communications" means oral or written communications of any kind, communicated directly or indirectly, including, without limitation inquiries, complaints, discussions, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondences, memoranda, notes, telegrams, facsimiles, electronic mail (e-mail) messages and attachments, instant or direct messages (including SMS messages, text messages, Apple iMessages, Slack messages, Teams messages), memoranda, documents, writings, or other forms of communications. The term "Communications" includes instances where one party disseminates information that the other party receives but does not respond to.

5. "Complaint" refers to the operative complaint at the time of this deposition. At the time of service, the currently operative Complaint is Plaintiff's Complaint. ECF No. 1.

6. “Concerning,” whether capitalized or not, refers to and includes “constituting,” “evidencing,” “supporting,” “regarding,” “mentioning,” “reflecting,” “concerning,” “relating to,” “referring to,” “pertaining to,” “alluding to,” “responding to,” “proving,” “discussing,” “assessing,” “disproving,” “connected with,” “commenting on,” “about,” “showing,” “describing,” and/or logically or factually dealing with the matter described in the request in which the term appears.

7. “Data” means content, files, information, metadata, software, or any other digital material including Documents, including copies and backups of any of the foregoing digital material, whether in custodial or non-custodial sources.

8. “Document” is used in its broadest sense allowed by Rule 34(a) of the Federal Rules of Civil Procedure and includes, but is not limited to, any writings, drawings, graphs, handwriting, typewriting, printing, photostatting, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.

This includes:

- The originals, drafts and All non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise;
- Booklets, brochures, pamphlets, circulars, notices, periodicals, papers, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, financial calculations and representations, invoices, accounting and diary entries, inventory sheets, diaries, appointment books or calendars, teletypes, telefaxes, thermafaxes, ledgers, trial balances, correspondence, telegrams, press releases, advertisements, notes, working papers, drawings, schedules, tabulations, projections, information or programs stored in a computer (whether or not ever printed out or displayed), and All drafts, alterations, modifications, changes or amendments of any of the foregoing;

- Graphic or aural representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotapes, recordings, drawing, charts and motion pictures;
- All letters, words, pictures, sounds, or symbols, or combinations thereof stored in or on any electronic, mechanical, magnetic, or optical device including, but not limited to: (i) computer data storage devices (servers, laptops hard-drives, flash drives, discs, magnetic cards, and the like), (ii) the internet or "the Cloud" (such as e-mail, web posts, social media posts, internet pages, etc.), and (iii) information stored on cell phones.

9. "Including" and "Includes," whether capitalized or not, are used to provide examples of certain types of information and should not be construed as limiting a request or definition in any way. The terms "including" and "includes" shall be construed as if followed by the phrase "but not limited to."

10. "Online Database(s)" means the type of databases described in the Complaint—online databases with copyrighted material or books including but not limited to Books3, b3g, Z-Library (aka B-ok), Library Genesis (aka LibGen), Bibliotik, Anna's Archive, Internet Archive, DuXiu, The Pile, and WeLib. The term encompasses all versions, updates, augmentations, or modifications of such databases, and the distribution, provision, or sharing of copyrighted material or books by other users, or peers, via the torrent protocol or network.

11. "Relevant Period" includes and encompasses all times relevant to the acts and failures to act which are relevant to the Complaint.

12. "Torrent," "Torrented," and "Torrenting" mean peer-to-peer file sharing, including the use of Torrent Client(s), in which users download and/or upload pieces of digital files from and/or to multiple different users (peers) in a network simultaneously.

13. "Torrent Client(s)" means a network or application, including but not limited to implementations of the BitTorrent protocol, designed for sharing digital data and that was used by Meta to obtain data from any Online Database.

14. "Torrented Data" means Data acquired via Torrenting of Online Databases.

15. "You" or "Your" refers to Anthropic PBC, or entities, agents, or individuals under the employ of or otherwise controlled by Anthropic PBC, or entities owned in whole or in part by Anthropic PBC.

## INSTRUCTIONS

1. Anthropic must designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf as to each Topic set forth below, and must prepare each designee to provide complete and binding testimony as to information known or reasonably available to Anthropic concerning the designated Topic(s).

2. Before or promptly after service, the parties shall confer in good faith regarding these Topics. Plaintiff will meet and confer with Anthropic in an effort to reach agreement on the Topics, the identity and number of designees, and the date, time, and location (or remote means) of the deposition.

3. The designation of a witness for a given Topic constitutes a representation that the witness is prepared to provide testimony binding on Anthropic as to that Topic. If no witness with knowledge of a Topic is reasonably available, Anthropic shall so state and identify any person or entity it knows or believes to have such knowledge.

4. If Anthropic objects to any Topic, its objection shall (a) identify with particularity the portion of the Topic to which the objection is directed and (b) set forth clearly the extent of, and specific ground for, the objection; and Anthropic shall designate and prepare a witness to testify as to each Topic, or portion thereof, that is not objectionable.

5. To the extent Anthropic contends that any Topic calls for testimony protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection, it shall state the basis for withholding such testimony with sufficient specificity to permit Plaintiff and the Court to assess the claim, without revealing privileged information.

## MATTERS FOR EXAMINATION

1. The ability or capability of any of Your artificial-intelligence models, including any version of Claude, to generate, continue, summarize, transform, imitate, or reproduce literary content of different types or forms, including fiction (including novels and genre fiction), nonfiction

(including biographies, memoirs, essays, and journalism), short-form works (including short stories and articles), textbooks, academic or educational works, reference works, poetry, drama, and instructional or technical works.

2. Any testing, evaluation, benchmark, study, analysis, report, or comparison of the abilities or capabilities identified in Request No. 1, including assessments of output length, quality, coherence, creativity, factual accuracy, genre or style fidelity, similarity to existing works or authors, and the extent to which model-generated output may substitute for or compete with human-authored works.

3. Your efforts to license books and other content for AI training.

4. The identity, versions, configuration, and settings of each Torrent Client You used to obtain Data from Online Databases from January 1, 2019 to the present.

5. Your efforts to prevent, limit, or mitigate uploading, re-uploading, seeding, peer exchange, or otherwise making Data available to other users during or after the Torrenting process.

## CERTIFICATE OF SERVICE

**COURT:** United States District Court, Northern District of California

**CASE NAME:** *Cognella, Inc. v. Meta Platforms, Inc.*

**CASE NUMBER: 3:26-cv-04053-VC**

I, the undersigned, am employed by Freedman Normand Friedland LLP. My business address is 155 E. 44th St., Suite 915 New York, NY 10017. I am over the age of eighteen and not a party to this action.

On August 17, 2026, I caused the following documents to be served by email upon the parties listed on the attached Service List:

- **PLAINTIFF'S NOTICE OF DEPOSITION OF ANTHROPIC PBC**

I declare under penalty of perjury that the foregoing is true and correct.

Executed: August 17, 2026

**FREEDMAN NORMAND FRIEDLAND LLP**

*/s/ Kyle Roche*
Kyle Roche

## SERVICE LIST

**DUNN ISAACSON RHEE LLP**
Karen L. Dunn (pro hac vice)
Jessica E. Phillips (pro hac vice)
Kyle N. Smith (pro hac vice)
401 9th Street NW Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

**COOLEY LLP**
Bobby A. Ghajar (198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Mark R. Weinstein (193043)
Elizabeth Lee Stameshkin (260865)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: mweinstein@cooley.com
lstameshkin@cooley.com

Kathleen R. Hartnett (314267)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com

Phillip E. Morton (pro hac vice)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 728-7055
pmorton@cooley.com

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Angela L. Dunning (212047)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*